COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Willis and Bray
Argued at Norfolk, Virginia


VIRGINIA INTERNATIONAL TERMINALS, INC.

v.          Record No. 2573-94-1            OPINION
                                    BY JUDGE JOSEPH E. BAKER
MELVIN C. MOORE, JR.                     MAY 14, 1996


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        F. Nash Bilisoly (Susan B. Potter;
        Vandeventer, Black, Meredith & Martin, on
        brief), for appellant.

        John H. Klein (Rutter & Montagna, on brief),
        for appellee.



        Virginia International Terminals, Inc. (employer) appeals

from the decision of the Workers' Compensation Commission

(commission) that affirmed the deputy commissioner's award of

benefits to Melvin C. Moore, Jr. (claimant).  Employer presents

three questions: (1) whether there was sufficient evidence for

the commission to find that claimant was disabled as of September

1, 1990, and that he made reasonable efforts to market his

remaining work capacity; (2) whether claimant's claim is barred

by the statutes of limitations embodied in Code §§ 65.1-56 and

65.1-99; and (3) whether employer is entitled to a credit for the

total dollar amount paid under the Federal Longshore and Harbor

Workers' Compensation Act (LHWCA).

        Claimant sustained a compensable injury on November 10, 1986

while working as a hustler driver for employer.  A "hustler" is a

vehicle which moves cargo containers.  Claimant fractured both

wrists as the result of a fall from a hustler vehicle. Claimant made several unsuccessful attempts to return to his pre-injury job and became a patient of Dr. Lawrence Morales, an orthopedic surgeon, on May 4, 1987. Dr. Morales concluded that claimant could not return to his job as a hustler driver but could do work of a lighter nature. On May 5, 1988, claimant filed a claim with the commission for the injury suffered in 1986.[1]

On June 1, 1988, surgery was performed on claimant's right wrist. On July 28, 1988, claimant was discharged from the care of his surgeon, Dr. Theodore DuPuy, having received from him a thirty-five percent permanent disability rating to his upper extremity. From that date through August 31, 1990, claimant received permanent partial disability benefits under the LHWCA, as well as periods of temporary total disability (during surgery in 1988 and 1993) under the LHWCA. Employer asserts it paid a total of $128,578.60 under that act.

Sometime during 1991, claimant began looking for work. Claimant could remember only that his search commenced during warm weather. Vocational counselor Michael Hulen attempted to assist claimant in job placement beginning July 31, 1991, and did so unsuccessfully for three months, though claimant was cooperative. Claimant offered into evidence a list of sixty-nine employers with their respective phone numbers from which he

---

[1]No hearing was held on this claim until February 10, 1994.

sought employment. Claimant's application was dismissed without prejudice by order entered May 8, 1992.

On June 7, 1993, surgery was performed on claimant's left hand. Prior to this surgery, claimant was capable of performing light-duty work with his right hand but not his left. Dr. Morales, claimant's surgeon and treating physician, released claimant, on September 21, 1993, to perform light and medium duty work. He limited claimant from work "requiring repetitive motions of both hands or both wrists such as assembly-type work, heavy lifting, pushing, pulling, repetitive grasping, turning of wrenches with different tools or instruments . . . ."

I. Claimant's Disability and Efforts to Market Work Capacity

Employer contends that there was insufficient evidence for the commission to find that claimant was disabled as of September 1, 1990, when his benefits under the LHWCA were exhausted, and that claimant failed to make reasonable efforts to market his remaining capacity for work.

In reviewing the commission's decision, we are guided by well-settled principles. A finding of fact made by the commission which is supported by credible evidence is conclusive and binding upon this Court. Fairfax Hosp. v. DeLaFleur, 221 Va. 406, 410, 270 S.E.2d 720, 722 (1980). "A question raised by conflicting medical opinion is a question of fact." Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986). "The fact that there is contrary evidence in the record is of no

consequence if there is credible evidence to support the commission's finding." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

While Dr. DuPuy opined on several occasions that claimant was capable of returning to his pre-injury employment, the commission discounted his opinion, noting that it was not apparent that Dr. DuPuy knew of the actual duties of a hustler driver. The commission, instead, placed greater weight on the opinion of claimant's treating physician, Dr. Morales, who, in reaching his conclusion that claimant could not return to his pre-injury employment, had visited claimant's work site and handled a hustler vehicle. Dr. Curtis Spear, also an orthopedic surgeon, who examined claimant at the request of claimant's union, concurred in Dr. Morales's opinion. In addition, claimant made several attempts to return to his former job but was unable to continue because of pain in his hands and arm. See Sky Chefs, Inc. v. Rogers, 222 Va. 800, 284 S.E.2d 605 (1981) (unsuccessful attempts to return to pre-injury employment may be considered in determining the extent of a claimant's disability). The opinions of Drs. Morales and Spear and claimant's unsuccessful efforts at returning to work provide credible evidence to support the commission's finding that claimant's occupational injury kept him from resuming his pre-injury work.

In order to receive continued benefits, a disabled employee must prove that he made reasonable efforts to market his residual

- 4 -

wage earning capacity. National Linen Serv. v. McGuinn, 8 Va. App. 267, 269, 380 S.E.2d 31, 34 (1989). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing party before the commission." Id. at 270, 380 S.E.2d at 33.

In reviewing the commission's determination concerning claimant's efforts to market his work capacity, we note, as did the commission, that claimant was cooperative with Mr. Hulen, the rehabilitative counselor supplied by employer. However, Mr. Hulen could not secure employment for claimant. Also, Dr. Morales found claimant motivated to return to work. Though claimant's list of employers from whom he sought employment is not an extensive record for marketing efforts generally, the commission observed that claimant can read and write at only a second or third grade level. Given this record, credible evidence supports the commission's finding that claimant's marketing efforts were reasonable.

## II. Statutes of Limitations

Employer argues that the statute of limitations under former Code § 65.1-56, now Code § 65.2-501, bars claimant's claim. Code § 65.2-501, in pertinent part, reads as follows:

> After compensation has been paid as provided in § 65.2-503 [compensation for permanent loss], the employee may, within one year from the date compensation was last due under this section, file an application for incapacity to work . . . .

(Emphasis added).  Employer, noting that the commission affirmed the deputy commissioner's April 1, 1994 award of seventy weeks of permanent partial disability benefits, running from July 28, 1988 to November 29, 1989, reasons that November 29, 1990, one year from the last date compensation was allowed, was the last day on which claimant could seek compensation due to an incapacity to work.  The statute of limitations in Code § 65.2-501, however, does not begin to run until compensation for permanent loss was "last due" under Code § 65.2-503.  Because compensation for claimant's permanent loss did not become due under that code section until his award was entered by the deputy commissioner on April 1, 1994, claimant's claim was not time barred.  The fact that under the LHWCA compensation was last due on November 29, 1989 is of no import; only an award made under Code § 65.2-503 can trigger Code § 65.2-501.

Employer also raises the statute of limitations of former Code § 65.1-99, now Code § 65.2-708.  Code § 65.2-708(A) reads, in pertinent part, as follows:

> A. Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded . . . .  No such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title . . . .

(Emphasis added).  This code section is inapplicable.  Claimant's March 25, 1993 application by letter of counsel did not allege a

change in condition but was an initial request for temporary total disability benefits. Under Code § 65.2-708, the commission is empowered to "end[], diminish[] or increas[e] the compensation previously awarded." (Emphasis added). Prior to April 1, 1994, no award had been entered by the commission on claimant's behalf. The award provided under the LHWCA is of no benefit to employer; the two-year limitation on review provided for in Code § 65.2-708 applies only to awards made "under this title," with "this title" referring to Title 65.2 -- the Virginia Workers' Compensation Act (Virginia Act).

### III. Credits for Benefits Paid Under the Longshore and Harbor Workers' Compensation Act

A review of the Virginia Act clearly discloses the General Assembly's intent that an injured employee not be awarded a double recovery for a compensable injury; equally evident in the Virginia Act is the General Assembly's intent that an employer not be required to pay twice for an employee's injury. The question presented here is whether under the facts of this case the award made by the commission requires employer to pay twice for claimant's compensable injury. We believe that it does.

Depending upon the circumstances, employees who are injured while working as longshoremen may elect whether to first seek workers' compensation benefits under the LHWCA or the Virginia Act. Both the LHWCA and the Virginia Act provide compensation for permanent injuries by ordering weekly payments for a stated number of weeks, depending upon the extent of the permanent

injury. We were advised at oral argument that this claimant elected to pursue his claim for benefits under the LHWCA because that act provides larger weekly payments for wages lost due to injury, albeit for a lesser number of weeks. Thus, a longshoreman has a choice between higher payments for a lesser number of weeks under the LHWCA or lower payments for a greater number of weeks under the Virginia Act.

Employer asserts that pursuant to the provisions of the LHWCA, claimant was paid a total of $128,578 which includes weekly wage-loss payments and payments for a 35% permanent partial disability.

When claimant could no longer recover compensation payments under the LHWCA, he requested a hearing pursuant to the provisions of the Virginia Act. At the hearing before the deputy commissioner, employer contended that it was entitled to a dollar-for-dollar set off for amounts paid under the LHWCA against any award made by the commission pursuant to the provisions of the Virginia Act. The commission held that "the employer is entitled to set off the number of weeks that benefits were paid under LHWCA rather than the total amount . . . of compensation paid under LHWCA."[2] Any weekly amounts employer

---

[2]The deputy commissioner found that the total compensation claimant was entitled to under the Virginia Act was $112,516.54. Employer asserted before the commission that since it had paid claimant more than that sum, any award to be made by the

paid under the LHWCA which exceeded what was due under the Virginia Act were not credited against employer's liability under the Virginia Act.

When enacting the Virginia Act, the General Assembly anticipated that compensation benefits might be paid to injured employees other than those ordered by an award. Among the provisions of the act addressing payments made other than by the terms of the Virginia Act is Code § 65.2-520, entitled "Voluntary payments by employer," which provides:

> Any payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this title were not due and payable when made, may, subject to the approval of the Commission, be deducted from the amount to be paid as compensation provided that, in the case of disability, such deductions shall be made by shortening the period during which compensation must be paid and not by reducing the amount of the weekly payment.

(Emphasis added). Subject to the approval of the commission, an employer is entitled to a credit for any "voluntary payment" it may have made to the employee. As defined by the statute, a payment is "voluntary" if it was not "due and payable" by "the terms of this title" when made. Thus, the disability payments employer paid claimant under the LHWCA were "voluntary" because when paid they were not "due and payable" under "the terms of"

commission had been satisfied, and it was due a credit of the overage paid.

- 9 -

the Virginia Act.  Therefore, the amounts paid under the LHWCA should have been deducted from employer's liability as determined by the commission.  The statute makes no exception to its command, and its language directing that a credit be provided for "any" voluntary payments indicates an intent to provide a credit for all payments that fall within its classification of "voluntary."

Both employer and the deputy commissioner cite Tiller v. Long Homes, Inc., 228 Va. 343, 323 S.E.2d 71 (1984), as authority for their respective positions.  In Tiller, the Supreme Court affirmed the commission's decision allowing the employer a credit against the award.  The facts in Tiller are not the same as in the matter before us.  The employer's overpayment in Tiller arose from its own mistake; employer's overpayment in this case resulted from payments made under the mandate of federal law.  In both cases, however, the overpayments were "voluntary" as defined in the Virginia Act.  A case more closely analogous to the one before us is Evans v. AT&T Technologies, Inc., 332 N.C. 78, 418 S.E.2d 503 (1992).  In Evans, the North Carolina Supreme Court held that an employer is entitled to a full dollar-for-dollar credit toward its workers' compensation liability for amounts paid prior to an award pursuant to the employer's disability plan.

We hold that the commission erred in concluding that employer was not entitled to credit for the amount employer paid

under the LHWCA that exceeded its obligation under the Virginia Act.

Except as to the issue of credit, the decision of the commission is affirmed.  On the issue of credit for payments made by employer under the LHWCA, the commission is reversed and the case remanded.  Upon remand, the commission shall determine the amount paid by employer as compensation under the LHWCA, which amount shall be set off against employer's liability under the Virginia Act and credit shall be given to employer for the excess

amount paid against any future liability it may have to claimant for the injury received.

Affirmed in part,
reversed in part,
and remanded.