Present:  All the Justices

CROWN CENTRAL PETROLEUM
CORPORATION, ET AL.

v.    Record No. 962601     OPINION BY JUSTICE ELIZABETH B. LACY
                                    June 6, 1997
FRANK G. HILL, T/A CEDAR
ROAD AMOCO

UPON A QUESTION OF LAW CERTIFIED BY THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

Pursuant to our Rule 5:42, the United States District Court for the Eastern District of Virginia, Norfolk Division, certified to this Court a question of Virginia law involving the application of the Virginia Petroleum Products Franchise Act, Code §§ 59.1-21.8 through 59.1-21.18:1 (the Act).  The district court stated that the answer to the question will be determinative of a proceeding pending before it.  We accepted the certification by order entered January 15, 1997.

The following facts are set forth in the district court's certification order.  Crown Central Petroleum Corporation (Crown) is a petroleum refiner.  It seeks to build a gasoline service station on property owned by its wholly-owned subsidiary, Fast Fare, Inc., and sell Crown gasoline at that station.  Frank G. Hill operates a gasoline service station under a lease and dealer supply agreement with Amoco Oil Company, another petroleum refiner.  Hill's station is located within one and one-half miles of Crown's proposed station.

Section 59.1-21.16:2(A) of the Act provides, in pertinent part, that:
> no refiner of petroleum products shall operate any
> major brand, secondary brand, or unbranded retail
> outlet in the Commonwealth of Virginia with company

personnel, a parent company, or under a contract with any person, firm, or corporation, managing a service station on a fee arrangement with the refiner; however, such refiner may operate such retail outlet with the aforesaid personnel, parent, person, firm, or corporation if such outlet is located not less than one and one-half miles . . . from the nearest retail outlet operated by any franchised dealer.

Pursuant to 28 U.S.C. § 2201(a), Crown sought a declaratory judgment that this provision of the Act does not prevent Crown from building and operating the station on its property because the location prohibition applies only to retail outlets operated by a refiner within one and one-half miles of a retail outlet operated by a franchised dealer of that refiner. To resolve this issue, the district court certified the following question to us:

Whether the Virginia Petroleum Products Franchise Act, Va. Code § 59.1-21.16:2, was only intended to regulate intra brand competition, that is, competition among retailers of the same brand of products and representing the same company, or whether it was also intended to regulate interbrand competition, competition among retailers of different brands of products or representing different refiners as is contemplated by Crown's proposed use of its property.

We conclude that § 59.1-21.16:2(A) regulates interbrand competition because it prohibits a refiner from operating a retail outlet unless that outlet is located one and one-half miles or more from a retail outlet operated by a franchised dealer, including franchised dealers that are not franchisees of the refiner.

In construing statutes, courts are charged with ascertaining and giving effect to the intent of the legislature. <u>City of Winchester v. American Woodmark Corp.</u>,

250 Va. 451, 457, 464 S.E.2d 148, 152 (1995).  That intention is initially found in the words of the statute itself, and if those words are clear and unambiguous, we do not rely on rules of statutory construction or parol evidence, unless a literal application would produce a meaningless or absurd result.  Id.; Allen v. Chapman, 242 Va. 94, 100, 406 S.E.2d 186, 189 (1991); Beach Robo, Inc. v. Crown Central Petroleum Corp., 236 Va. 131, 134, 372 S.E.2d 144, 146 (1988).  The statutory language at issue here is clear on its face.  It prohibits a refiner from operating any retail outlet in Virginia unless the outlet is located one and one-half miles or more from a retail outlet operated by "any franchised dealer."  Nothing in the language used in the Act supports an interpretation that the franchised dealer must be a franchisee of the refiner.

Crown argues, however, that this interpretation improperly ignores explicit legislative findings contained in § 59.1-21.9 of the Act.  That section states:

> The General Assembly finds and declares that since the distribution and sales through franchise arrangements of petroleum products in the Commonwealth of Virginia vitally affect the economy of the Commonwealth, the public interest, welfare, and transportation, and since the preservation of the rights, responsibilities, and independence of the small businesses in the Commonwealth is essential to economic vitality, it is necessary to define the relationships and responsibilities of the parties to certain agreements pertaining thereto.

Crown asserts that these findings demonstrate that the General Assembly passed the Act to address the relationships between parties to franchise agreements and, therefore, the location prohibition contained in § 59.1-21.16:2(A) applies only to a

refiner and its franchised dealer, and not to refiners and franchised dealers unrelated by such an agreement. To apply the location prohibition to such unrelated refiners and franchised dealers is, Crown concludes, inconsistent with the clearly expressed intent of the General Assembly. We disagree.

A number of sections in the Act do address the franchise relationship, such as those prescribing certain terms of the agreement, requiring disclosure of information prior to the execution of the agreement, and setting conditions regarding its termination.[1] See §§ 59.1–21.11, –21.14, –21.15. The legislative findings, however, do not, as Crown suggests, compel an interpretation of the Act which restricts all economic regulation imposed by the Act to circumstances involving a refiner and its own franchisees.

Section 59.1–21.16:2, the section which includes the location restriction at issue, contains provisions that clearly regulate the conduct of refiners, irrespective of any franchise relationship. For example, the second paragraph of § 59.1–21.16:2(A) imposed a blanket prohibition on refiners constructing and operating retail outlets, from July 1, 1990 through June 30, 1991, unless the outlets were purchased, or under option to purchase, by March 1, 1990. This prohibition was not conditioned on a franchise relationship. Similarly,

---

[1] We note that if the General Assembly had intended only to restrict a refiner/franchisor from locating near its own franchisee, it could have easily required that the franchise agreement include a provision requiring the refiner/franchisor to agree not to locate its retail outlet within the proscribed distance from the franchisee's outlet.

subsection (B) requires refiners to apportion gasoline "among their purchasers" in times of shortages.  Again, this requirement is not based on the existence of a franchise relationship between the refiner and purchaser.  Indeed, "purchasers" include all parties buying product from the refiner, not just the refiner's franchisees.  These provisions of § 59.1-21.16:2 simply cannot reasonably be construed to limit their application to circumstances involving a refiner/franchisor and its franchised dealer, the construction Crown argues is required by the legislative findings contained in § 59.1-21.9.

The specific location prohibition at issue is completely consistent, not only with other provisions of § 59.1-21.16:2, but also with the expressed legislative intent, to preserve "the rights, responsibilities, and independence of the small businesses in the Commonwealth."  § 59.1-21.9.  A refiner operating a retail outlet is an integrated business entity which produces its product and sells that product at both the wholesale and retail level.  Thus, the refiner has the ability to allocate availability of its product and subsidize the price of its product sold at its retail outlets.  Such control could injure a franchised dealer regardless of whether the refiner is the franchisor of the dealer.  It is the refiner's integration and access to the product that puts the retail franchised dealer at a potentially competitive disadvantage.  Therefore, to protect the rights of franchised dealers in avoiding such a potentially unfair price structure and thus preserve the

independence of dealers, the General Assembly chose to require a minimum distance of one and one-half miles between a refiner-owned-and-operated retail station and a retail station operated by a franchised dealer.[2]

Finally, our construction of § 59.21-16:2(A) is not inconsistent with the regulations adopted by the Commissioner of Agriculture and Consumer Services, as Crown asserts. Crown cites to language in a regulation adopted by the Commissioner which allows a refiner to relocate its retail outlet "at least 1 1/2 miles from any other franchised retail outlet of the same brand." 2 Virginia Administrative Code § 5-460-20(A), at 516 (1996). This regulation, Crown argues, shows that the agency charged with enforcing the statute considers the prohibition to apply only to refiners and their franchised dealers. Crown's position, however, fails to consider the regulation in its full context.

Subsection (E) of § 59.1-21.16:2 is a grandfather clause which allows refiners to continue operating nonconforming retail outlets if they were operating the outlets on July 1, 1979. Rather than simply requiring a nonconforming outlet to comply with the location prohibition in the event the outlet had to be relocated, the General Assembly instructed the Commissioner to adopt regulations "providing for" relocation of

_____

[2] [2]Other states adopted similar protective legislation, often broader in scope, prohibiting petroleum refiners from operating any retail outlets based, inter alia, on evidence that refiners favored company-operated stations in allocating gasoline. Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 124 (1978).

such outlets.  § 59.1-21.16:2(D).  The regulation adopted by the Commissioner limited relocations to instances in which the original site was lost through involuntary condemnation, non-renewal by the owner of the property lease, or denial of a building permit or prohibited zoning.  The relocation had to be within a 10-mile radius of the original site and, rather than imposing the full prohibition against locating within one and one-half miles of "any franchised dealer," the relocated, grandfathered retail outlet was only precluded from relocating within one and one-half miles of "any other franchised retail outlet of the same brand."

This regulation was not an interpretation or application of the statutory location prohibition, but a response to the legislative directive to provide for circumstances in which a nonconforming but legal retail outlet was forced to relocate through no fault of its own.  In that response, the Commissioner struck a balance between strictly applying the statutory location prohibition and allowing the grandfathered retail outlet some relief as a result of a forced relocation. Nothing in the regulations promulgated by the Commissioner is inconsistent with the plain meaning of the statute.

Accordingly, because § 59.1-21.16:2(A) regulates interbrand competition, the certified question is answered in the negative.

Certified Question Answered in the Negative.