COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Frank
Argued at Chesapeake, Virginia


BAY CONCRETE CONSTRUCTION COMPANY, INC.
 AND THE UNION INSURANCE COMPANY
                                                      OPINION BY
v.       Record No. 3096-03-1                   JUDGE LARRY G. ELDER
                                                    AUGUST 3, 2004
FRANKIE OREAL DAVIS


             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             Richard A. Hobson (Law Office of Richard A. Hobson, on brief), for
             appellants.

             Carlton F. Bennett (Bennett and Zydron, P.C., on brief), for
             appellee.


      Bay Concrete Construction Co., Inc. (employer) and The Union Insurance Company

(carrier) appeal from a decision of the Workers' Compensation Commission holding that

overpayments of disability compensation to Frankie Oreal Davis (claimant) entitled carrier only

to a credit against any future compensation due and did not entitle it to recover those

overpayments from claimant "by action at law" pursuant to Code §§ 65.2-710 or 65.2-712.  We

hold the commission's refusal to certify the award for an action at law in the circuit court was not

error, and we affirm.

                                            I.

                                      BACKGROUND

      The facts are largely undisputed.  Claimant suffered an inguinal hernia on April 23, 1999,

while working for employer as a concrete foreman.  He continued working after the injury, but

on May 3, 1999, he underwent surgery for that condition and was temporarily and totally

disabled through at least October 11, 1999.

The carrier accepted the injury as compensable, and the commission entered an award for medical and disability benefits. Carrier paid claimant temporary total disability compensation from May 10, 1999, through October 11, 1999, in the total amount of $11,146.74. Notwithstanding claimant's inability to work during this same period, employer continued to pay him his pre-injury wages in the gross amount of $760 per week. Employer explained claimant had been a loyal and very hard-working employee for approximately 15 years prior to his injury. Employer "kept paying [claimant] . . . because of the value he was to the company" and because "[it] just wanted to make sure that [he] was financially taken care of until he could come back to work." Although the carrier began paying claimant disability compensation as of May 10, 1999, claimant did not inform employer of this fact and did not notify carrier that he was simultaneously receiving payments from employer equal to his full pre-injury wages.

In October 1999, employer and carrier each learned of the other's payments to claimant, and the carrier voiced an intention to seek a credit for the compensation payments it had made to claimant during that time. "[I]n order to protect [claimant from] any action that the [carrier] was going to take" due to the "double payments" claimant had received, employer and claimant entered into an agreement characterizing employer's payments to claimant as a loan that claimant would pay back to employer at the rate of $100 per month. Due to the existence of an "open award giving [claimant] [c]ompensation benefits," claimant's ongoing disability, and employer's representation that claimant had agreed to pay back to employer the monies he had received from employer while also receiving disability compensation, carrier did not seek a credit for the compensation payments at that time.

Claimant made no payments to employer pursuant to the terms of the agreement. Claimant testified that employer's president, Jim Williams, asked him to sign the repayment agreement because "the insurance company was on his back." Claimant testified Williams said

- 2 -

the agreement was "just for [carrier's] benefit," that Williams "was glad . . . he did what he did," and that he "wasn't looking for [claimant] to pay [the money] back." Williams testified he could not recall what, if anything, he told claimant about whether he expected claimant to make those payments.

In 2002, carrier filed an application for hearing in which it sought, *inter alia*, a credit for alleged overpayments made in 1999, based on claimant's simultaneous receipt of both monies equal to his full pre-injury wage from employer and temporary total disability compensation from carrier. Carrier also indicated its intent to request "certif[ication of] an[y] award for a credit to the circuit court to be reduced to a judgment upon which collection procedures at law would follow."[1]

The deputy commissioner ruled as follows:

> [K]nowledge regarding a claim is imputed from employer to insurer and from insurer to employer. Further, the evidence does not establish that the claimant engaged in any fraud or deception in regard to his receipt of these payments [from employer and insurer]. Nevertheless, the case law cited by the insurer shows that the insurer is due a credit for its overpayment of compensation as against any future compensation for disability that may be due. . . .
>     The employer has requested that the Commission certify any ". . . credit awarded to the circuit court." . . . We do not find any basis for such an attempt in the language of the Virginia Workers' Compensation Act. . . . [O]verpayments that occur absent fraud or a failure to report earnings can only be recouped by way of a credit. There is no evidence of fraud in this case and there was not a failure to report earnings given that the insurer and employer stand as one in regard to their knowledge of the status of the claim.

Carrier requested commission review of the deputy's decision. The commission, on review, summarized the deputy's decision and ruled as follows:

> The deputy commissioner found that the employer should be awarded a credit for the [1999] payments . . . [but] declined to

---

[1] The deputy's and commission's resolution of the other issues raised by carrier in its application are not before us in this appeal.

find that the claimant violated Code § 65.2-712 . . . . On [r]eview, the employer argues that these [1999] payments . . . were an "increase in earnings" under Code § 65.2-712. We do not agree.

The evidence did not show any earnings between May 14 and October 11, 1999. . . . [T]he employer, for business reasons, made the payments because of the claimant's work history with the employer. Code § 65.2-712 seeks to protect employers and insurers when payments are made to an employee as a result of fraud or misrepresentation or when an employee returns to work, or receives a pay increase after a return to work, but does not report the return to work or the pay increase. Here, the payments clearly were not "earnings" pursuant to a return to work as envisioned by Code § 65.2-712.

The employer . . . argues that the deputy commissioner incorrectly found that the claimant was not required to report the employer's payments to the carrier. . . . Code § 65.2-712 specifically provides that . . . a return [to work for one's pre-injury employer] shall be disclosed directly to the insurer, unless the employer is self-insured . . . . Here, however, there was no return to work, increase in post-return earnings, fraud, or misrepresentation such that Code § 65.2-712 should apply. Rather, there was an overpayment. The deputy commissioner awarded a credit to the employer against future compensation for this overpayment, and we see no reason to overturn this decision.

Carrier noted this appeal.[2]

---

[2] The Act expressly provides as follows:

When any employer is insured against liability for compensation with an insurance carrier, and such insurance carrier shall have paid any compensation for which the employer is liable or shall have assumed the liability of the employer therefor, it shall be subrogated to all the rights and duties of the employer and may enforce any such rights in its own name . . . ; however, nothing herein shall be construed as conferring upon the insurance carriers any other or further rights than those existing in the employer at the time of the injury to his employee, anything in the policy of insurance to the contrary notwithstanding.

Code § 65.2-812. Thus, the carrier stands in the shoes of the employer for purposes of seeking relief under the Act, even when it opts to sue in its own name. See Sheris v. Travelers Ins. Co., 491 F.2d 603, 605 (4th Cir. 1974) (relying on former Code § 65.1-112, predecessor to Code § 65.2-812).

Here, the deputy and commission actually awarded the credit to employer. However, the procedural history of the case makes clear that it was the carrier, pursuant to its contractual agreement to provide employer with workers' compensation insurance coverage, that made the

- 4 -

II.

ANALYSIS

Code § 65.2-710 provides that "[o]rders or awards of the Commission may be recorded,

enforced, and satisfied as orders or decrees of a circuit court upon certification of such order or

award by the Commission. The Commission shall certify such order or award upon satisfactory

evidence of noncompliance with the same." Code § 65.2-712 provides in relevant part as

follows:

> So long as an employee . . . receives payment of compensation
> under this title, [the employee] shall have a duty immediately to
> disclose to the employer, when the employer is self-insured, or
> insurer in all other cases, any . . . return to employment [or]
> increase in his earnings . . . . Any payment to a claimant by an
> employer or insurer which is later determined by the Commission
> to have been procured by the employee . . . by fraud,
> misrepresentation, or failure to report any . . . return to
> employment [or] increase in earnings may be recovered from the
> claimant . . . by the employer or insurer either by way of credit
> against future compensation payments due the claimant . . . or by
> action at law against the claimant . . . .

Here, the commission awarded employer a credit for the temporary total disability

compensation carrier paid claimant while employer continued to pay the disabled claimant sums

equal to his pre-injury wage.[3] Employer assigns error to (1) the commission's conclusion that

"carrier and employer stand as one in regard to their knowledge of the status of" a claimant's

return to work for employer; (2) the commission's finding that claimant had no duty to report to

carrier employer's ongoing payments to claimant under Code § § 65.2-712 because they were

not an increase in earnings and did not result from a return to work; and (3) the commission's

---

disability compensation payments and seeks the relief at issue in this appeal. For ease of
reference in the analysis section of this opinion, we refer to the appellant as employer. We are
aware of no dispute between carrier and employer as to who is entitled to the credit and do not
address any such dispute in this appeal.

[3] Claimant does not contest the commission's award of such a credit, and thus, we do not
consider the propriety of the credit award on appeal.

refusal to certify the award to the circuit court for a credit in accordance with Code §§ 65.2-710 or 65.2-712. We hold no reversible error occurred.

A.

IMPUTING TO CARRIER
KNOWLEDGE OF EMPLOYER'S ONGOING PAYMENTS

We hold employer's challenge to the conclusion that "carrier and employer stand as one in regard to their knowledge of the status of" a claimant's return to work for employer is not properly before us because only the deputy, not the commission, reached such a conclusion.

The deputy expressly held employer's knowledge of the status of claimant's claim was imputed to the carrier and implicitly held employer's payment of claimant's pre-injury wage amounted to a "return to employment" or "increase in earnings" that claimant would otherwise have had a duty to report under Code § 65.2-712.

The commission affirmed the deputy's award but did so for reasons different from those assigned by the deputy. The commission did not state that an employer's knowledge of a claimant's receipt of his pre-injury wage is imputed to the carrier. In fact, it implied the contrary by expressly acknowledging the language of Code § 65.2-712 providing that "a return [to work] shall be disclosed directly to the insurer, unless the employer is self-insured." Finally, the commission concluded that claimant had no "return to employment" or "increase in earnings" and, thus, had nothing to report.

In sum, only the deputy concluded that employer's knowledge of the status of claimant's claim was imputed to carrier for purposes of Code § 65.2-712. Because the commission did not rely on this reasoning in support of its affirmance of the award, the issue is not before us in this appeal.

- 6 -

B.

WHAT CONSTITUTES AN "INCREASE IN EARNINGS"
UNDER CODE § 65.2-712

Here, the commission expressly concluded that Code § 65.2-712 was inapplicable because "there was no return to work, increase in post-return earnings, fraud, or misrepresentation." Thus, the commission's affirmance of the deputy's award of credit did not occur pursuant to that statute. Instead, the commission found that the money employer gave to claimant despite his inability to work "was an overpayment" and appears implicitly to have applied the doctrine of imposition to award a credit against future compensation for disability paid claimant while claimant continued to receive from employer an amount equal to his pre-injury wages, despite his inability to work.

General principles of workers' compensation law provide that an employer or carrier should "not be required to pay twice for an employee's injury" and that double recoveries are to be avoided. See Va. Int'l Terms. v. Moore, 22 Va. App. 396, 403, 470 S.E.2d 574, 578 (1996) (determining employer's entitlement to credit, pursuant to voluntary payments provision of Code § 65.2-520, for disability paid under federal workers' compensation act), aff'd, 254 Va. 46, 50, 486 S.E.2d 528, 530 (1997). Applying these principles under the discretionary doctrine of imposition, the commission has "'jurisdiction to do full and complete justice in each case,'" which includes "'the power and authority not only to make and enforce its awards, but [also] to protect itself and its awards from fraud, imposition and mistake.'" Collins v. Dep't of Alcoholic Beverage Control, 21 Va. App. 671, 679-80, 467 S.E.2d 279, 282 (quoting Harris v. Diamond Constr. Co., 184 Va. 711, 720, 36 S.E.2d 573, 577 (1946)), aff'd on reh'g en banc, 22 Va. App. 625, 472 S.E.2d 287 (1996). Nevertheless, we are aware of "no authority . . . that permits the commission to use the imposition doctrine to override the clear provisions of a workers' compensation statute." Id. at 678, 467 S.E.2d at 282.

In the present appeal, employer challenges not the presumed application of the discretionary doctrine of imposition to award a credit but rather the construction of specific statutes under which employer claims it was *entitled* to pursue an action at law in the circuit court in order to recoup the amount of the credit.

"In construing statutes, courts are charged with ascertaining and giving effect to the intent of the legislature." Crown Cent. Petroleum Corp. v. Hill, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997). "That intention is initially found in the words of the statute itself, and if those words are clear and unambiguous, we do not rely on rules of statutory construction or parol evidence, unless a literal application would produce a meaningless or absurd result." Id. "'[W]here the legislature has used words of a plain and definite import[,] the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'" Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 249, 563 S.E.2d 368, 372 (2002) (quoting City of Va. Beach v. ESG Enters., 243 Va. 149, 152-53, 413 S.E.2d 642, 644 (1992)).

We are also guided by the principle that the Act "is highly remedial and should be liberally construed to advance its purpose . . . [of compensating employees] for accidental injuries resulting from the hazards of the employment." Henderson v. Central Tel. Co., 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987). Although "we are not bound by the commission's legal analysis in this or prior cases," USAir, Inc. v. Joyce, 27 Va. App. 184, 189 n.1, 497 S.E.2d 904, 906 n.1 (1998), we give great weight to the commission's construction of the Act, see City of Waynesboro v. Harter, 1 Va. App. 265, 269, 337 S.E.2d 901, 903 (1985), and we defer to the commission's factual findings if supported by credible evidence in the record, see Lynchburg Foundry Co. v. Goad, 15 Va. App. 710, 712, 427 S.E.2d 215, 217 (1993).

Here, employer did not allege and presented no evidence that claimant failed to disclose to carrier a return to work during the period in question. In addition, credible evidence supported the commission's determination that claimant did not commit fraud or misrepresentation in order to procure the disability compensation payments at issue. The undisputed evidence established that he was totally disabled during the relevant period of 1999.

Finally, the record supports the commission's conclusion that claimant did not receive an "increase in earnings." Claimant was totally disabled, and employer continued to pay him not for any work he actually did but solely in the hope that he would remain a loyal employee and eventually return to work for employer. The Act equates "earnings" with "wages." Smith v. Robert W. Smith, 32 Va. App. 242, 255, 527 S.E.2d 463, 470 (2000) (citing Code § 65.2-101).

> "The reason for calculating the average weekly wage is to approximate the economic loss suffered by an employee . . . when there is a *loss of earning capacity* because of work-related injury." . . . If the claimant suffers a disability as a result of the injury, the commission must compare the claimant's pre-injury average weekly wage to *the wage he is able to earn* after the injury to determine whether he is entitled to total or partial disability benefits and, if so, at what rate.

Id. at 249-50, 527 S.E.2d at 467 (quoting Bosworth v. 7-Up Distrib. Co., 4 Va. App. 161, 163, 355 S.E.2d 339, 340 (1987)) (emphases added).

Here, because of claimant's total physical disability, he was not able to earn any wage during the period in question, and thus, he had no "earnings" within the plain meaning of Code § 65.2-712. Cf. Allegheny Airlines, Inc. v. Merillat, 14 Va. App. 341, 344-45, 416 S.E.2d 467, 469-70 (1992) (holding under predecessor to Code § 65.2-500 that entitlement to temporary total disability benefits requires only proof of pre-injury average weekly wage and a showing of total disability and does not require proof that the claimant's "weekly earnings are reduced below his pre-injury average weekly wage as a result of injuries sustained in the industrial accident"). Accordingly, the evidence proved, at most, that carrier made an overpayment of compensation to

claimant due to a mistake, and the commission awarded employer a credit for those overpayments as against future compensation.[4] See Harris, 184 Va. at 720, 36 S.E.2d at 577. Adopting the construction of Code § 65.2-712 "sought by employer[] would require us to extend the . . . Act's provisions beyond their obvious meaning and to hold that the legislature did not mean what it actually expressed. If such a change is to be made, it is for the legislature to undertake, not us." Peacock, 38 Va. App. at 251, 563 S.E.2d at 373.

In addition to the clear language of the statute, policy reasons also dictate this result. If anyone has suffered a loss in this case, it is not carrier but employer, which paid both sums equal to claimant's pre-injury wage and its own workers' compensation insurance premiums. Employer paid the money to the claimant "for business reasons . . . because of the claimant's work history with the employer." Employer paid at its own expense, not carrier's; employer, having paid its workers' compensation insurance premiums, was entitled to have claimant, its injured employee, compensated by carrier for the undisputed period of time in 1999 during which he was temporarily and totally disabled.

Further, a primary purpose of providing for recoupment by credit rather than an action at law in cases in which no fraud, misrepresentation or failure to report a return to work or increase in earnings has been shown is that, in the absence of such proof, no evidence establishes the claimant was at fault in causing the overpayment, and he or she is the party presumably least able to bear the burden of losing money if forced to repay it in an action at law. Allowing recoupment through a credit as opposed to an action at law best balances the dual goals of preventing a claimant's unjust enrichment without unduly penalizing the claimant financially for failing to recognize or report the overpayment in a more timely fashion.

---

[4] See supra note 2.

- 10 -

Thus, under the plain meaning of Code § 65.2-712, we affirm the commission's conclusion that claimant had no "increase in earnings" he was required to report.

C.

AUTHORITY FOR RECOUPMENT OF OVERPAYMENTS IN AN
ACTION AT LAW UNDER CODE §§ 65.2-710 OR 65.2-712

Employer contends the provisions of Code §§ 65.2-712 or 65.2-710 authorized it to seek recoupment of the overpayment in an action at law. We hold neither statute entitled employer to such relief under the facts of this case.

Code § 65.2-712 authorizes an action at law against a claimant only where the claimant has "procured [the payment of compensation] . . . by fraud, misrepresentation, or failure to report any . . . return to employment [or] increase in earnings." As we held above, see *supra* Part II.B., the evidence fails to establish an "increase in earnings," fraud or misrepresentation, and employer did not allege a return to work. Thus, Code § 65.2-712 does not authorize an "action at law against the claimant" for recovery of the overpayment.

Code § 65.2-710 provides that "[t]he commission shall certify [an] order or award [to a circuit court for recording, enforcement and satisfaction] upon satisfactory evidence of noncompliance with the same." Here, the commission's award was for a credit against future compensation, and the record contained no evidence of "noncompliance with the same." Thus, Code § 65.2-710 also did not authorize the commission to certify the credit award for enforcement.

III.

For these reasons, we hold the commission's refusal to certify the award for an action at law in the circuit court pursuant to Code §§ 65.2-710 or 65.2-712 was not error, and we affirm.

Affirmed.

- 11 -

Frank, J., concurring.

I concur with the opinion to the extent that the commission correctly determined that Code § 65.2-712 does not apply to this case. The only remaining issue is whether the commission erred in not allowing the carrier to pursue a civil remedy.

No one contests that an overpayment was made or that the carrier is entitled to a credit. In its brief, the carrier premised certification under Code § 65.2-710 upon a finding of a violation of Code § 65.2-712. Under the carrier's theory before the commission, if it does not prevail under Code § 65.2-712, then there is no civil relief under Code § 65.2-710. The issue of whether Code § 65.2-710 applies independently to this case was not before the commission and is not properly before this Court. I therefore disagree that this Court has the authority to consider the independent application of Code § 65.2-710 and would not address the issue of whether or not the commission properly declined to certify the award to the circuit court.