COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Kelsey and McClanahan
Argued by teleconference


THE UNINSURED EMPLOYER'S FUND
                                                        OPINION BY
v.       Record No. 3002-04-4              JUDGE D. ARTHUR KELSEY
                                                   SEPTEMBER 20, 2005
MICHAEL LEWIS WILSON


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             Paul R. Schmidt (Huff, Poole & Mahoney, P.C., on brief),
             for appellant.

             No brief or argument for appellee.


The Uninsured Employer's Fund seeks a credit against medical benefits owed under the

Virginia Workers' Compensation Act for payments made to the claimant pursuant to an

out-of-state settlement that had not been submitted to the Virginia Workers' Compensation

Commission for approval.  The commission denied the credit, reasoning that Code § 65.2-520

authorizes credits only against compensation payments, not medical benefits.  We agree and

affirm.

I.

Michael Lewis Wilson, a Michigan resident, worked for George Kountoupes Painting Co.

His employer, also based in Michigan, hired Wilson to paint a water tower in Portsmouth,

Virginia.  Wilson sustained injuries to his head, neck, and back while working on the tower.  He

filed a claim for benefits with the commission seeking a temporary-total disability award and

lifetime medical benefits.  Over the employer's objection, the commission awarded Wilson the

requested benefits.

Meanwhile, Wilson and his employer entered into a settlement in Michigan that called for a payment of $75,000, plus payment of all outstanding medical expenses, and payment of the "Virginia award," which included a temporary-total disability award and a 20% penalty. Wilson and his employer appeared before the Michigan Bureau of Workers' Disability Compensation at a redemption proceeding to jointly request approval of their settlement. A Michigan magistrate examined Wilson under oath, reviewed the settlement terms, and then approved the settlement. At no point during this examination did Wilson, his employer, or the magistrate question whether the settlement should likewise be submitted to the Virginia Workers' Compensation Commission for approval.

About a year later, Wilson filed a claim in Virginia seeking reimbursement for prescription medications purchased after the settlement. When the employer's insurance carrier denied coverage, the Uninsured Employer's Fund (UEF) joined the employer in defending against Wilson's claim. Both took the position that the commission should approve the Michigan settlement after the fact, and if it chooses not to do so, the commission should still give the employer a $75,000 credit against this or any future medical claims.

The commission rejected both arguments. On appeal to us, UEF has abandoned the first argument seeking retroactive approval of the settlement. UEF continues to assert, however, that it (as assignee of the employer's rights) should receive a credit for settlement payments against any liability for medical benefits under Virginia law.

II.

An employer has every right to settle a compensation claim with an employee. But if it does so without the approval of the commission, the release and discharge aspects of the settlement have no legal effect on the employer's liability under the Virginia Workers' Compensation Act. See Ratliff v. Carter Mach. Co., 39 Va. App. 586, 591-92, 575 S.E.2d 571,

574 (2003) (citing <u>Damewood v. Lanford Bros. Co.</u>, 29 Va. App. 43, 45, 509 S.E.2d 530, 531 (1999)).  That is true even if the settlement has been approved by another state's workers' compensation commission.  <u>See</u> <u>United Airlines, Inc. v. Kozel</u>, 33 Va. App. 695, 702, 536 S.E.2d 473, 476 (2000).  To prevent a double recovery, however, Code § 65.2-520 allows unapproved settlement payments to "be deducted from the amount to be paid as *compensation*" to the employee under Virginia law.

As UEF concedes, the "conventional meaning" of compensation includes only "wage loss compensation, also commonly known as 'indemnity payments.'"  Appellant's Br. at 9.  That definition would necessarily exclude medical benefits, which usually involve payments to third-party medical providers.  We agree with this concession, finding it consistent with the historic use of the term and the usual meaning assigned to it.

When first enacted in 1918, the Virginia Workmen's Compensation Act mandated that employers provide "medical and surgical care for injured employees" and that "rates of compensation" be awarded based upon work-related wage loss.  <u>See</u> Parke P. Deans, <u>Workmen's Compensation in Virginia</u> 28 (1938) (quoting introduction to 1918 Va. Acts, ch. 400 (S.B. No. 35)).  "All compensation payments are based upon the average weekly earnings of the employee with certain minimum and maximum amounts provided."  <u>Id.</u> at 12 (quoting S. Doc. No. 3 (1918)).[1]  This conceptual distinction also appears in specific provisions of the Act, like Code § 65.2-600(D), which provides that no "compensation or medical benefit" may be awarded if the employee does not file a timely claim.

Both the commission and Virginia appellate courts have likewise treated these concepts as related, but different.  The conventional view of "compensation" has been relied upon to

---

[1] 1918 Senate Document No. 3 was the result of a House of Delegates Joint Resolution on February 5, 1916, authorizing the Governor to create a commission to research workmen's compensation laws in the United States and to make recommendations for the Commonwealth.

exclude medical payments from the statutory provision governing the 12-month limitation period for review of an award.  Meade v. Clinchfield Coal Co., 215 Va. 18, 19, 205 S.E.2d 410, 411 (1974); see also Lynchburg Foundry Co. v. McDaniel, 22 Va. App. 307, 311 n.2, 469 S.E.2d 85, 88 n.2 (1996).  Cf. Commonwealth Dep't of Highways & Transp. v. Williams, 1 Va. App. 349, 357, 338 S.E.2d 660, 665 (1986) (excluding cost-of-living supplements from "compensation" within the meaning of Va. Wrk. Comp. Rule 13(B)).  Along these same lines, the commission has held that medical benefits do not constitute "compensation" for purposes of recouping overpayments under Code § 65.2-712.  Mabe v. Happy Stores #494, VWC File No. 139-34-48, 1994 Va. Wrk. Comp. LEXIS 148 (June 20, 1994); see also Bullington v. Marshall Boys Logging,VWC File No. 180-34-06, 2002 Va. Wrk. Comp. LEXIS 1819 at *3 (Oct. 7, 2002) (noting that the "operative statute" in Mabe was Code § 65.2-712).

We believe the General Assembly likewise intended Code § 65.2-520 to employ the conventional meaning of "compensation" and thus exclude medical benefits from the statutory credit.  The surrounding context of Code § 65.2-520, a prominent feature of Chapter 5 of the Act, confirms this view.  Chapter 5 includes a series of "compensation" payments made directly to the injured claimant, including disability benefits for total incapacity, § 65.2-500; partial incapacity, § 65.2-502; permanent loss, § 65.2-503; disability caused by pneumoconiosis, § 65.2-504; and death benefits, § 65.2-512.  See also Code § 65.2-518 (limiting total compensation to, *inter alia*, 500 weeks of wage loss benefits with no provision for consideration of medical benefits paid).  The employer's liability for medical benefits — which usually involves payments not to the claimant, but to medical providers — does not appear in this series.  Instead, the duty to provide medical benefits comes from Code § 65.2-603(A)(1), a provision in Chapter 6.

- 4 -

In response, UEF contends that other provisions of the Act employ an unconventional meaning of "compensation" — one that includes medical payments.[2] That may well be true. But in such situations, the statutory context may arguably require this interpretation because no plausible reason for excluding medical benefits can be discerned from the text alone. We accept "that the conventional use of a term may be misleading when placed in an unconventional statutory context." Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 277, 610 S.E.2d 321, 325 (2005). To decide the narrow issue before us, however, we see no need to go further than Code § 65.2-520 — which, when viewed within its surrounding statutory context, employs the "compensation" concept in its conventional sense.[3]

Finally, UEF argues that this interpretation is "an affront to the public good" because it frustrates the "public policy against allowing a claimant a 'double recovery.'" Appellant's Br. at 7. The only public policy that concerns us, however, is the policy advanced by the legislature in the statute. The legislature is the "author of public policy." Campbell v. Commonwealth, 246 Va. 174, 184 n.8, 431 S.E.2d 648, 654 n.8 (1993). "We can only administer the law as it is written." Coalter v. Bargamin, 99 Va. 65, 71, 37 S.E. 779, 781 (1901). For us, then, the "best indications of public policy are to be found in the enactments of the Legislature." City of

---

[2] In support, UEF cites Code § 65.2-701(A) (authorizing agreements "in compromise of a claim for compensation"). Cf. Code § 65.2-306(A) (listing acts disqualifying claimant from "compensation"); Code § 65.2-508(A) (addressing foreign injuries for which the claimant would be "entitled to compensation"); Code § 65.2-601 (barring "compensation under this title" for claims not filed within two years).

[3] UEF also argues that our decision should be controlled by Va. Int'l Terminals, Inc. v. Moore, 22 Va. App. 396, 405, 470 S.E.2d 574, 578 (1996), which in *dicta* stated that voluntary payments should be deducted against the "employer's liability" under the Act, which would presumably include not only disability compensation benefits, but also medical benefits. As *dicta*, however, this aspect of Va. Int'l Terminals, Inc. has no binding *stare decisis* effect. See Newman v. Newman, 42 Va. App. 557, 566, 593 S.E.2d 533, 538 (2004) (*en banc*) ("*Dicta* cannot 'serve as a source of binding authority in American jurisprudence.'" (citation omitted)).

- 5 -

Charlottesville v. DeHaan, 228 Va. 578, 583, 323 S.E.2d 131, 133 (1984) (quoting Danville v.

Hatcher, 101 Va. 523, 532, 44 S.E. 723, 726 (1903)).

Both the text and the context of Code § 65.2-520 suggest the General Assembly intended

to permit voluntary payments to serve as a credit against compensation payments, but not

medical benefits. By doing so, the statute reduces the risk that an injured employee would ever

find himself in a position where he needed medical care but could not pay for it because he

dissipated prior voluntary payments (like the lump-sum unapproved settlement funds paid to

Wilson) on other things. Whether it "may or may not be better public policy" to do otherwise,

"such judgments are not ours to make." Washington v. Commonwealth, 46 Va. App. 276, 283,

616 S.E.2d 774, 778 (2005) (*en banc*). When a correct reading of the workers' compensation

statute nonetheless results in the potential for "undeserved benefits," the decision to rebalance

the ledger lies solely "within the province of the legislature, not the judiciary." Newport News

Shipbuilding & Dry Dock Co. v. Holmes, 37 Va. App. 188, 193, 555 S.E.2d 419, 422 (2001).[4]

III.

Voluntary payments made to a claimant pursuant to an unapproved out-of-state

settlement may not be credited under Code § 65.2-520 against an employer's liability to provide

medical benefits. For this reason, we affirm the commission's award.

Affirmed.

---

[4] On appeal, UEF also argues that Code § 65.2-1206 provides an independent basis for reversing the commission's decision. Cf. Bullington v. Marshall Boys Logging, VWC File No. 180-34-06, 2002 Va. Wrk. Comp. LEXIS 1819 (Oct. 7, 2002) ("Non-Fund employers are limited by § 65.2-712 to recovering overpayments from 'compensation.' § 65.2-1206 contains no such limitation."). The record, however, reveals that UEF never made this argument to the full commission. As a result, the commission did not analyze or decide whether Code § 65.2-1206 grants UEF a credit under the facts of this case. "Thus, Rule 5A:18 prevents [the appellant] from raising it for the first time in this Court." Wolfe v. Va. Birth-Related Neurological Injury Comp. Program, 40 Va. App. 565, 579, 580 S.E.2d 467, 474 (2003).