COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Elder, Frank, Humphreys, Clements, Kelsey, McClanahan,
Haley, Petty and Beales
Argued at Richmond, Virginia


CORPORATE RESOURCE MANAGEMENT INC.
                                                              OPINION BY
v.          Record No. 2694-06-2                    JUDGE LARRY G. ELDER
                                                              JANUARY 8, 2008
LOURENDA A. SOUTHERS

UPON A REHEARING EN BANC

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

John T. Cornett, Jr. (Williams & Lynch, on briefs), for appellant.

Timothy J. Healy (Law Office of Timothy J. Healy, on brief), for
appellee.

*Amicus Curiae*: Virginia Trial Lawyers Association (Philip B.
Baker; Sanzone & Baker, P.C., on brief), for appellee.


Corporate Resource Management Inc. (CRM) appeals from a decision of the Workers'

Compensation Commission awarding benefits to Lourenda A. Southers (claimant) for an injury

to her neck. On appeal, CRM contends the commission erred in concluding claimant was

entitled to workers' compensation benefits coverage for a neck injury where the injury

manifested itself primarily as shoulder pain, CRM accepted a "shoulder" injury as compensable,

and claimant did not file a timely claim for a "neck" injury. A panel of this Court agreed,

holding by a vote of two to one that Code § 65.2-601's two-year statute of limitations left the

commission without jurisdiction to award compensation for a neck injury. See Corporate

Resource Management, Inc. v. Southers, 50 Va. App. 20, 646 S.E.2d 10 (2007). Pursuant to

claimant's petition for a rehearing *en banc*, we stayed the mandate of that decision and granted a

rehearing *en banc*.

On rehearing *en banc*, we hold that under Shawley v. Shea-Ball Construction Co., 216

Va. 442, 219 S.E.2d 849 (1975), coverage for claimant's neck injury is not barred by the statute

of limitations. CRM accepted as compensable claimant's chronic symptoms, documented

throughout her medical records as consistently involving pain in both her shoulder and her neck,

when those chronic symptoms had been diagnosed as a shoulder injury. The subsequent

determination that those symptoms emanated from an injury to claimant's neck rather than to her

shoulder does not negate CRM's acceptance of the symptoms as a compensable injury or the

commission's entry of an award for those symptoms.[1] The commission found the timely-filed

claim for a shoulder injury, made via an agreement to pay benefits form prepared by CRM's

representative, encompassed the subsequently diagnosed neck injury, and credible evidence

supports that finding. Thus, we affirm the commission's award of benefits.

I.

BACKGROUND

Because claimant prevailed before the commission, we recite the evidence in the light

most favorable to her. See, e.g., Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503,

504, 339 S.E.2d 916, 916 (1986). So viewed, the evidence established that claimant sustained an

injury by accident on May 23, 2003, when she was vacuuming and fell backward down a series

of four steps while working as a housecleaner for Cottage Care, a division of CRM. She was

carrying a "portavac" around her neck, and when she fell, she landed with all her weight on her

left shoulder. She sought medical treatment, complaining of pain throughout her entire left

shoulder and across the back of the shoulder blade that "moves to [the] left side of [her] neck."

---

[1] Due in large part to a dispute between CRM and its purported insurance carrier, which resulted in a delay in claimant's receipt of medical treatment, claimant received a diagnosis of neck injury as the source of her chronic neck and shoulder symptoms only after the applicable statute of limitations had run. Employer remained free to challenge causation based on the new diagnosis, and employer in fact did so before the commission in this case.

She came under the care of an orthopaedist, Dr. Praveer Srivastava, who ordered various tests, including a left shoulder MRI, and a course of physical therapy but was unable to determine the source of claimant's shoulder and neck pain. When a course of work hardening resulted in some improvement, Dr. Srivastava released claimant to return to work without restrictions, but within a few weeks, she reported a recurrence of "severe[] symptom[s]" in her shoulder and neck and was again excused from work.

During that time frame, CRM and its purported insurance carrier were engaged in a dispute over whether CRM in fact had coverage at the time of claimant's accident. While that dispute was ongoing, the carrier requested an independent medical examination with Dr. Howard G. Stern. After examining claimant on September 26, 2003, Dr. Stern noted "signs and symptoms of a left cervical radiculopathy" and recommended an MRI of claimant's cervical spine.

Dr. Wilhelm A. Zuelzer saw claimant in October 2003 to render a second opinion at claimant's request. Dr. Zuelzer, like Dr. Srivastava, noted claimant's ongoing neck and left shoulder pain, but Dr. Zuelzer opined claimant's shoulder was "fine" and was not the source of her symptoms. Dr. Zuelzer, like Dr. Stern, recommended an MRI of the neck, but Dr. Zuelzer indicated he thought that, regardless of what the MRI showed, claimant's ongoing pain "more than likely is coming from [the neck] area." He also recommended "medication to help [claimant] sleep, mobilization modalities and possibly a very localized trigger point injection."

After receiving Dr. Zuelzer's recommendations, Dr. Srivastava ordered additional tests including an MRI of claimant's cervical spine. The MRI revealed only a "[m]inimal C5-6 posterior disc bulge" and was "otherwise normal." When claimant returned to Dr. Srivastava on November 20, 2003, with "unchanged symptoms" including persistent neck and left shoulder pain, Dr. Srivastava informed her that her various tests revealed no significant abnormalities, and

he released her to regular duty. Dr. Stern, who independently reviewed the results of claimant's cervical MRI in the first part of 2004, agreed with Dr. Srivastava that the MRI excluded cervical radiculopathy and, thus, that claimant was capable of returning to full duty employment.

Although Dr. Zuelzer had suggested "mobilization modalities" or "a very localized trigger point injection," the record contains no indication that Dr. Srivastava offered claimant either of these treatments. Thereafter, claimant experienced "[ongoing] neck and shoulder pain," but Dr. Srivastava refused to treat her because "the bills were not paid at that time." Claimant had no private health insurance and also had insufficient funds to obtain her own medical treatment because she was unable to work due to her injury during that time. Thus, although claimant experienced ongoing pain, CRM's dispute with the purported carrier and Dr. Srivastava's refusal to treat claimant without advance payment prevented her from receiving medical treatment for her chronic symptoms from late 2003 until mid-2005.

In late 2003, claimant sought additional temporary total disability benefits, but the dispute between CRM and the carrier delayed resolution of this claim as well. In March 2005, CRM accepted liability for the additional period of temporary total disability. An award for disability and lifetime medical benefits for the shoulder injury was entered on May 2, 2005, and at claimant's request, CRM offered her a new panel of physicians on May 11, 2005. Claimant chose a new treating physician from the list but was not able to obtain an appointment with him until June 8, 2005, two years and approximately two weeks after her accident of May 23, 2003.

When claimant saw her new treating physician, Dr. John Frederick Meyers, on June 8, 2005, she reported chronic pain in her left upper back and shoulder, and Dr. Meyers noted tenderness and limited rotation in claimant's neck. He diagnosed her as having cervical radiculitis. After a spine surgeon determined claimant was not a candidate for surgery, she was referred to a pain management physician, Dr. Michael DePalma.

Dr. DePalma performed a series of diagnostic injections and opined that claimant had facet joint arthrosis of the cervical spine at C5-6. Dr. DePalma indicated that "[t]he primary source of [claimant's] pain was the [facet] joint" and explained that this was a different diagnosis categorically from cervical radiculopathy, which is a dysfunction of the nerve root at the vertebral joint rather than at the facet joint. He also noted that "[f]acet joint arthrosis is . . . difficult to completely discern just on MRI findings." Finally, he opined to a reasonable degree of medical probability that claimant's work-related fall caused the injury to her cervical spine, which was the source of her symptoms and work restrictions.

When claimant filed a new change-in-condition application, CRM contended the claim for a neck injury was barred by the statute of limitations because her original claim was for an injury to her left shoulder only.[2] At the hearing before the deputy, claimant testified that the primary pain she experienced was consistently in the same part of her body, which she described as her entire back left shoulder with radiation into her left arm and hand. She testified that Dr. Meyers, whom she first saw over two years after the accident, was the first physician to tell her that her "injury was coming from [her] neck." She denied having "any other accidents of any kind whatsoever since [her] original accident back in 2003." She agreed that she signed the agreement to pay benefits form on September 18, 2003, listing her injury as a "contusion to [her] left shoulder" and that she had an attorney when she did so, but she indicated she did not complete the form herself.

---

[2] Claimant "relie[d] on estoppel or imposition, given the complicated procedural history" of the claim. As the deputy explained claimant's argument, due to the dispute between CRM and its purported carrier, "the prior claim was not resolved until May 2005. A new panel [of physicians] was then awarded. By the time the claimant saw the new doctor [who she testified was the first to diagnose her injury as being to her neck], it was more than two years beyond the date of accident." Claimant raised the doctrine of imposition before both the deputy and the commission, but the commission chose to make no ruling on the application of the doctrine because it found the statute of limitations did not bar the claim.

The deputy concluded that claimant's claim was not barred by the statute of limitations, reasoning as follows:

> [T]he Agreement to Pay Benefits form reflects a contusion to the left shoulder. Medical records reflect some neck pain . . . . Despite conflicting opinions about the etiology of the claimant's symptoms, it is clear that they have their origin in the occupational accident and have manifested themselves primarily as shoulder symptoms. The claimant could not reasonably be expected to file a claim for a neck injury when none had been diagnosed, and we do not believe her claim is time-barred because a new physician now disagrees with the earlier diagnosis as to the etiology of her symptoms.

The deputy further noted that the claim did not involve a situation in which claimant sustained multiple injuries to different parts of the body and filed a timely claim for injury to only one of those body parts.

CRM filed a request for review, and the commission affirmed, with one commissioner dissenting. The majority reasoned as follows:

> The Agreement to Pay Benefits form indicated the nature of injury to be a contusion to the left shoulder. The claimant has consistently complained of pain in the lateral section of her shoulder, which at times included neck pain and radiation both down the arm and up the neck. It is uncontradicted that her symptoms never changed from the date of the accident. While the claimant complained of neck and shoulder complaints, she received various diagnoses relating only to the shoulder and it was not until she underwent substantial diagnostic evaluations that Drs. Meyers and DePalma diagnosed her with a neck injury.
>
> Therefore, *we find that this is not a case involving injuries to two separate body parts but the same injury throughout the course of treatment, now presenting with an altered diagnosis.* We find that the constant symptoms caused by the injury encompassed both the shoulder and neck and neither the nature of the injury nor the manifestation of the symptoms have changed since the date of injury or when the Agreement to Pay Benefits form was executed. The claimant's symptoms have consistently manifested in shoulder pain which [only] recently [has been] attributed to claimant's neck injury. We agree with the Deputy Commissioner that it was reasonable for the claimant to have relied on the treating

> physician's diagnoses in seeking benefits relating to the shoulder contusion and it would be unreasonable to expect a claimant to file a claim for an injury to a body part, for the same symptoms for which the claimed diagnosis was made, for which her physician had not identified any specific injury.

(Emphasis added). The commission noted that CRM had notice of the accident and injury and that the Workers' Compensation Act does not "impose a duty on employees to amend agreement forms with each new development in treatment." It distinguished the holding in Shawley as involving the untimely filing of a claim for a body part wholly unrelated to the body part named in the initial claim for benefits.

CRM noted this appeal.

## II.

## ANALYSIS

On appeal, we are guided by the principle that the Workers' Compensation Act "is highly remedial." Henderson v. Cent. Tel. Co., 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987). Although "statutory construction may not be used to extend the rights created by the Act beyond the limitations and purposes set out therein," Garcia v. Mantech Int'l Corp., 2 Va. App. 749, 754, 347 S.E.2d 548, 551 (1986), the Act should nevertheless "be liberally construed to advance its purpose . . . [of compensating employees] for accidental injuries resulting from the hazards of the employment," Henderson, 233 Va. at 382, 355 S.E.2d at 599. "Although 'we are not bound by the commission's legal analysis in this or prior cases,' we give great weight to the commission's construction of the Act, and we defer to the commission's factual findings if supported by credible evidence in the record." Bay Concrete Constr. Co. v. Davis, 43 Va. App. 528, 538-39, 600 S.E.2d 144, 150 (2004) (quoting USAir, Inc. v. Joyce, 27 Va. App. 184, 189 n.1, 497 S.E.2d 904, 906 n.1 (1998)) (citations omitted).

"'The right to compensation under the [workers'] compensation law is granted by statute, and in giving the right the legislature has full power to proscribe the time and manner of its exercise.'" Binswanger Glass Co. v. Wallace, 214 Va. 70, 73, 197 S.E.2d 191, 193 (1973) (quoting Winston v. City of Richmond, 196 Va. 403, 407, 83 S.E.2d 728, 731 (1954)). Via Code § 65.2-601, the legislature has provided that "[t]he right to compensation under [the Workers' Compensation Act] shall be forever barred[] unless a claim be filed with the Commission within two years after the accident." The statute of limitations in Code § 65.2-601 is jurisdictional. Barksdale v. H.O. Engen, Inc., 218 Va. 496, 497, 237 S.E.2d 794, 795 (1977). Statutes of limitations "are designed to suppress fraudulent and stale claims from being asserted after a great lapse of time, to the surprise of the parties, when the evidence may have been lost, the facts may have become obscure because of a defective memory, or the witnesses have died or disappeared." Street v. Consumers Mining Corp., 185 Va. 561, 575, 39 S.E.2d 271, 277 (1946). Whether the information filed with the commission is sufficient to constitute a timely filed claim for a particular injury is a question of fact, and the commission's finding will not be disturbed on appeal if supported by credible evidence. See, e.g., Fairfax County Sch. Bd. v. Humphrey, 41 Va. App. 147, 158, 583 S.E.2d 65, 70 (2003).

The Supreme Court applied the Act's statute of limitations in the seminal case of Shawley,[3] upholding the commission's finding that a timely claim for injuries to an employee's left ankle and right hip did not preserve a claim for injuries to his back and right ankle where the medical records gave no indication of any injuries to the back and right ankle until after the statute of limitations had passed. 216 Va. at 443-47, 219 S.E.2d at 851-53. The Supreme Court noted the commission's factual findings that "the back and right ankle claims asserted by

_____
[3] Shawley was decided under Code § 65.1-87, the predecessor to present Code § 65.2-601, which provided a one-year statute of limitations.

[Shawley] were for injuries not covered by the memorandum of agreement or [the commission's] original award" and that Shawley made "'no assertion *or complaint* of back or right leg injury'" until after the applicable statute of limitations had expired. Id. at 444, 445, 219 S.E.2d at 851, 852 (emphasis added).

CRM, relying on Shawley, argues that a timely claim was filed only for claimant's shoulder injury and that, because it is undisputed claimant's current disability stems from an injury to her cervical spine rather than her shoulder, the statute of limitations bars her from receiving benefits for the cervical spine injury. We hold Shawley is distinguishable and does not support application of the statute of limitations to bar benefits for the only chronic injury claimant sustained. In Shawley, the commission found the record contained no timely complaints concerning Shawley's back and right ankle and that the claimed injuries to these body parts were not covered by the memorandum of agreement.[4] The Court listed what it referred to as "compelling" reasons for requiring a claimant to file a timely claim for all injuries sustained in a particular accident--the need of the employer to "determin[e] whether or not there was in fact an injury, the nature and extent thereof, and if related to the accident." Id. at 446, 219 S.E.2d at 853. The Court also noted that the filing of a timely claim allows an employer to obtain "the treatment necessary to effect a cure of the claimant and to minimize the employer's liability." Id. at 447, 219 S.E.2d at 853. Because Shawley reported only an injury to his left ankle and right hip, the employer had no notice that Shawley contended his back and right ankle were involved; no opportunity to make a contemporaneous determination about whether the back and right ankle injuries could, in fact, have been sustained in the accident reported; and no ability to obtain timely medical treatment for those body parts not originally listed in order to minimize

---

[4] The commission has replaced its former memorandum of agreement form with the agreement to pay benefits form.

- 9 -

its liability for disability and medical treatment resulting from injury to those parts. In addition to noting Shawley did not file a timely claim for injury to those body parts, the Supreme Court emphasized that "[a]n examination of the medical reports and other documents submitted within the [statute of limitations] period from the date of the accident fail[ed] to disclose any reference to an injury to Shawley's back or to his right leg or right ankle" and that "[n]owhere in any of the reports [was] it recorded that Shawley complained of such an injury within that period." Id. at 444-47, 219 S.E.2d at 851-53. Thus, the Court found relevant *both* the failure to file a formal claim listing injuries to the back and right ankle prior to expiration of the statute of limitations *and* the absence of any mention of injury to those body parts in the medical records prior to expiration of the statute of limitations.

Claimant's situation is readily distinguishable.[5] In claimant's case, claimant reported falling on her left shoulder, and CRM accepted as compensable the injury to claimant's left shoulder. In marked contrast to Shawley, the commission found that, contemporaneously with the accident and prior to expiration of the statute of limitations, claimant "consistently complained of pain in the lateral section of her [left] shoulder, which at times included *neck pain and radiation . . . up the neck*." (Emphasis added). The commission's finding that claimant's cervical spine injury was encompassed by the award for her shoulder injury was supported by credible evidence in the record.[6] As the commission stated,

---

[5] The decision in Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 623 S.E.2d 433 (2005), cited by the dissent, also is distinguishable from claimant's situation. The outcome in Tuck was based in large part on the unique procedural history and facts as found by the commission in that case and, thus, is not at odds with our holding here.

[6] Claimant testified that she did not report neck pain to her medical providers, although frequent notations about reports of neck pain appear in her medical records. The deputy considered this testimony in his opinion but implicitly concluded it did not compel the finding that claimant made no such reports. The commission also found as a fact that claimant

it was reasonable for the claimant to have relied on the treating physician's diagnoses in seeking benefits relating to the shoulder contusion and it would be unreasonable to expect a claimant to file a claim for an injury to a body part [the neck], for the same symptoms for which the claimed diagnosis was made, for which her treating physician had not identified any specific injury.

Application of such reasoning under the facts of this case does not contravene Shawley's holding regarding the "compelling" reasons entitling an employer to timely notice of a particular injury. Here, unlike in Shawley, claimant's timely claim for a left shoulder injury and her consistent complaints to her medical providers of pain in her left shoulder radiating into her neck gave CRM all the notice it needed to meet the objectives that Shawley termed "compelling" reasons requiring the timely filing of a claim for all injured body parts. CRM had timely notice of claimant's assertion that she suffered a significant blow to her left shoulder area, and claimant received timely medical attention for the affected, interrelated body parts and symptoms. Claimant, a layperson with a ninth grade education, could not be expected to know precisely where her scapular region ended and her cervical region began.

---

"consistently complained of pain in the lateral section of her shoulder, which at times included neck pain and radiation both down the arm and up the neck."

Credible evidence in the record supports these findings. Further, these findings do not run afoul of the ruling announced in Massie v. Firmstone, 134 Va. 450, 462, 114 S.E. 652, 656 (1922), which provides that, although a party offering witnesses giving conflicting testimony may ask the court to accept the more favorable testimony, that principle is not applicable "to the testimony which [the litigant] gives himself" because "[n]o litigant can successfully ask a court or jury to believe that he has not told the truth." The holding in Massie applies to "statement[s] of fact within [the litigant's] knowledge" but not to "expression[s] of opinion." Ford Motor Co. v. Bartholomew, 224 Va. 421, 431, 297 S.E.2d 675, 680 (1982).

On this record, the evidence supported a finding that claimant's testimony that she did not report neck pain to her medical providers was not a "statement of fact within [her] knowledge" in the sense that she was a layperson with a ninth grade education and no medical training. The commission was entitled to conclude that this seeming discrepancy between claimant's testimony and her medical records resulted from the fact that claimant could merely have shown the various treating medical personnel where she hurt, after which they determined the appropriate name for the part of the body part or parts to which she referred. Clearly, the primary location of claimant's pain was her left shoulder, and as set out *infra* in the text, claimant, a layperson with a ninth grade education, could not be expected to know with anatomic precision where her scapular region ended and her cervical region began.

- 11 -

Further, neither claimant's original treating physician nor the physician who performed an independent medical examination at CRM's request was successful in determining the precise source of claimant's radiating shoulder pain before the statute of limitations had expired. In fact, both these physicians purported to *exclude* claimant's cervical region as the source of her chronic pain. The physician from whom claimant obtained a second opinion, Dr. Zuelzer, noted in his records that claimant's problems most likely were emanating from her neck regardless of what a cervical MRI revealed, and he recommended "mobilization modalities and possibly a very localized trigger point injection." However, after claimant's cervical MRI revealed no abnormalities, Dr. Srivastava did not offer those treatments to claimant, and claimant went without medical attention for eighteen months while CRM attempted to determine whether it had workers' compensation coverage for claimant's accident.

When the "primary source" of claimant's chronic pain was finally diagnosed as "facet joint arthrosis" of the cervical spine at C5-6, CRM had the opportunity to contest causation and was not held to its prior acceptance of claimant's injury to her "shoulder" as binding it to cover the newly diagnosed source of claimant's pain. CRM does not contest the commission's determination of causation in this appeal and does not contend that it might somehow have proved the injury to claimant's cervical spine was unrelated to the industrial accident if it had received notice of the precise mechanism of claimant's injury within the statutory period. Claimant should not be penalized because her physicians were not initially successful in identifying the source of her symptoms, particularly in light of the lengthy break in her medical treatment caused by CRM's dispute with its putative insurance carrier.

Finally, although claimant was represented by counsel, it was CRM's representative, not claimant or claimant's counsel, who prepared the agreement to pay benefits form upon which the award of benefits was based. That form listed the injury as a shoulder "contusion" despite the

fact that the medical records in the possession of CRM's representative made clear, prior to the time the agreement to pay benefits was filed with the commission, that claimant had suffered more than a mere "contusion." CRM conceded at oral argument on rehearing *en banc* that the description of injury in the agreement to pay benefits form did not limit claimant to treatment for a "contusion" to the shoulder and was broad enough to cover all of claimant's chronic neck and shoulder symptoms if those symptoms were actually caused by an injury to the left shoulder more severe than a mere "contusion." We agree on these facts that barring benefits for injuries to the shoulder beyond a mere contusion would open the door wide to undesirable consequences that do not further the purpose of the Act and are not compelled by Code § 65.2-601 or Shawley. Such a holding would create an enormous pitfall for the unwary claimant, who has no obvious reason or incentive not to accept the benefits to which he or she will be entitled under an agreement to pay benefits in which the employer or insurance carrier has chosen to list only one of several compensable injuries that the employee may have received or to describe the injury as being to the most precise or narrowly restricted body part.

Despite this concession, however, CRM contends it is not responsible for claimant's chronic shoulder and neck symptoms now that it has been determined that they are caused by an injury to claimant's neck rather that her shoulder. We reject this reasoning. If the listing of shoulder "contusion" is broad enough to include all injuries to the shoulder sustained at the same time as the contusion, as well as all symptoms caused by those other injuries in adjacent body parts, which employer agrees that it is, we see no principled basis for distinguishing the case in which, unbeknownst to the claimant and the employer, those same exact symptoms actually emanate from a simultaneously incurred injury to the neck rather than the shoulder and the precise etiology of the symptoms is determined only after the statute of limitations has expired. The fact that CRM did not learn at an earlier time the precise mechanism causing claimant's

- 13 -

chronic pain was not the fault of claimant, was partially the fault of CRM due to its lapse in providing her with medical treatment, and did not prejudice the employer. Applying the statute of limitations on these facts--where employer accepted claimant's symptoms as a compensable shoulder injury, claimant's symptoms remained constant, and the only thing that changed was the diagnosis concerning the source of those symptoms--would provide a windfall to CRM and impose upon claimant a forfeiture not required by either the statute or controlling case law interpreting it.

Thus, on these facts, we hold credible evidence in the record supports the commission's conclusion that its entry of an award for medical and disability benefits for claimant's "shoulder injury" of May 23, 2003, covered the cervical spine facet joint arthrosis injury that manifested itself in claimant's chronic shoulder and neck pain.

### III.

For these reasons, we hold the commission did not err in concluding the statute of limitations did not prevent claimant from receiving benefits for the injury to her neck. Thus, we affirm the commission's award of benefits.

<u>Affirmed.</u>

Kelsey, J., with whom Clements, McClanahan, and Haley, JJ., join dissenting.

When Lourenda Southers fell at work, she injured two separate parts of her body. She bruised her left shoulder and damaged the C5-6 facet joint of her cervical spine. Represented by counsel, Southers asserted a timely claim (which the employer agreed to compensate) alleging *only* a "contusion" to the "left shoulder." She did not assert a claim alleging (nor did the employer agree to compensate) any injury to her cervical spine. To be sure, Southers's counsel concedes on appeal that neither he nor his client even knew "she had a specific neck injury" until *after* the expiration of the two-year statute of limitations. See Oral Argument *En Banc* at 23:20 to 25:00 (Nov. 8, 2007). "*No one knew*" about the neck injury, counsel explained, during the statutory limitations period. Id. (emphasis added).[7]

It does not really matter, Southers argues, because she did not need to file a specific claim for a cervical spine injury. The claim alleging a left shoulder bruise should be deemed sufficient. That it is not, however, was settled 30 years ago by Shawley v. Shea-Ball Constr. Co., 216 Va. 442, 219 S.E.2d 849 (1975). There, too, an injured worker argued it was "not necessary for him to specify all injuries" in his original claim. Id. at 446, 219 S.E.2d at 853. The Virginia Supreme Court flatly disagreed, holding "an employee must assert against his employer any claim that he might have for *any injury* growing out of the accident." Id. (emphasis added). Stressing the "jurisdictional" nature of the filing deadline, Shawley held that the claim for injuries to his back and right leg was "forever barred," id. at 445-46, 219 S.E.2d at 852, because these injuries were not identified in the original, timely-filed claim — which listed only injuries to his "right hip and left ankle," id. at 443, 219 S.E.2d at 850.

---

[7] Southers also concedes on appeal the inapplicability of any limitations period relevant to compensable consequences. See generally Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 601 S.E.2d 693 (2004).

- 15 -

For the reasons discussed in <u>Corporate Resource Mgmt., Inc. v. Southers</u>, 50 Va. App. 20, 646 S.E.2d 10 (2007), the effort to distinguish <u>Shawley</u> strikes me as both unconvincing and unprecedented. Nor can Southers's argument be squared with <u>Tuck v. Goodyear Tire & Rubber Co.</u>, 47 Va. App. 276, 283, 623 S.E.2d 433, 436 (2005), which applied the statute of limitations to an untimely claim for a "neck" injury when the timely claim, memorialized in a memorandum of agreement, identified only injuries to the "lower back and right shoulder." <u>Id.</u> (affirming <u>Tuck v. Goodyear Tire & Rubber Co.</u>, VWC File No. 204-66-57, 2005 Va. Wrk. Comp. LEXIS 274, at *10 (Apr. 8, 2005)).

The <u>Shawley</u> bar does not apply, the *en banc* majority holds, because "CRM accepted as compensable claimant's chronic symptoms" and the commission entered "an award for those symptoms." *Ante*, at 2. The conceptual error in this reasoning, however, lies just beneath the surface. <u>Shawley</u> has in effect been sidelined by the transposition of one word, *injury*, with another, *symptom*. <u>See</u> *ante*, at 2, 13-14.

<u>Shawley</u> held an injured worker must assert "any claim that he might have for any *injury* growing out of the accident." 216 Va. at 446, 219 S.E.2d at 853 (emphasis added). An injury is the anatomical change to the body caused by the accident. A symptom is not an injury but a sign of an injury — like pain, dizziness, itching, and the like. The damage caused by Southers's fall to the C5-6 facet joint of her cervical spine was not a *symptom* of her shoulder bruise. Nothing in the medical records suggests such a confusion of concepts. The fall caused two injuries: a cervical spine injury and a shoulder bruise. Neither is a symptom of the other. The cervical spine injury was itself an injury — one anatomically different, obviously so, from a contusion to the left shoulder.

It only compounds the error to assert that CRM somehow agreed to compensate Southers for the cervical spine injury or that the commission found as much. <u>See</u> *ante*, at 2. In the

- 16 -

memorandum of agreement, Southers identified the "injury or illness, including parts of body affected" solely as a "contusion" to the "left shoulder." Neither Southers nor her counsel even knew of her cervical spine injury within the two-year filing deadline. It was for that reason, counsel explains, he limited the claim to the left shoulder bruise. The commission's award order, moreover, simply "approved" the agreement and ordered benefits for the specified "injury." CRM never accepted liability for a cervical spine injury, nor did the commission's award order impose that unknown liability upon CRM.

It is true courts "liberally" construe workers' compensation law in favor of claimants. *Ante*, at 7. But that approach, when misapplied, sometimes produces illiberal consequences. In this case, the *en banc* holding relieves Southers and her counsel of their responsibility for failing to file a timely claim for the cervical spine injury. That case-specific show of mercy, however, will produce an unmerciful systemic impact on future claimants. While unintended, the effect of the holding will discourage employers like CRM from agreeing to accept the compensability of relatively minor injuries for fear that their "agreement" will be later construed by the courts to cover more serious unknown and unforeseeable injuries — including those for which the employer, absent its agreement, would have otherwise been able to successfully challenge as noncompensable.

In short, Shawley governs this case. Southers's timely claim alleging a left shoulder bruise defined the boundaries of CRM's liability, as well as the limits of the commission's remedial jurisdiction. By moving the liability markers out to include an injury to Southers's cervical spine, after the expiration of the two-year time bar, the *en banc* majority authorizes the commission to exercise a jurisdictional power denied it by Shawley.

- 17 -

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **18th** *day of* **September, 2007**.

Corporate Resource Management, Inc., Appellant,

against              Record No. 2694-06-2
                       Claim No. 216-22-62

Lourenda A. Southers, Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Felton, Judges Benton, Elder, Frank, Humphreys, Clements, Kelsey, McClanahan, Haley, Petty and Beales

On June 26, 2007 came the appellee, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on June 12, 2007, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on June 12, 2007 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established: Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed. The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the

Court in this matter.  It is further ordered that the appellee shall file twelve additional copies of

the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Kelsey and McClanahan
Argued at Richmond, Virginia

CORPORATE RESOURCE MANAGEMENT, INC.

OPINION BY
v.       Record No. 2694-06-2                                    JUDGE D. ARTHUR KELSEY
                                                                JUNE 12, 2007
LOURENDA SOUTHERS

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> John T. Cornett, Jr. (Roger L. Williams; Daniel E. Lynch;
> Williams & Lynch, on brief), for appellant.
>
> Timothy J. Healy (Law Office of Timothy J. Healy, on brief), for
> appellee.

Corporate Resource Management, Inc. (CRM) appeals an award of the Workers'

Compensation Commission to Lourenda Southers for an injury to the C5-6 facet joint of her

cervical spine. Relying on Code § 65.2-601's two-year statute of limitations, CRM claims the

commission had no jurisdiction to award compensation for a neck injury because the only timely

claim asserted by Southers identified her injury as a "contusion to the left shoulder." We agree

and reverse the commission's award.

I.

In 2003, Southers fell down some steps and landed on her left shoulder. Represented by

counsel, Southers claimed her accident caused bruising to her left shoulder. CRM accepted the

claim without contest after Southers executed a memorandum of agreement specifying the

"nature of injury" and "parts of body affected" as a "contusion to the left shoulder."

More than two years after the accident, Southers sought compensation for an injury to the

C5-6 facet joint of her cervical spine. CRM denied the claim on several grounds, including the

two-year statutory time bar codified in Code § 65.2-601. Though acknowledging Southers never

filed a timely claim "alleging any neck injury," the commission rejected CRM's assertion of the time bar. By a majority vote, the commission stated that the statutory time bar applied only to "an untimely filing of a claim for a body part *unrelated* to that reflected in the initial claim for benefits." (Emphasis added.) The commission then reasoned that the time bar did not apply to Southers's case because her accident did not involve "injuries to two *separate* body parts." A dissenting commissioner disagreed, finding the majority's reasoning inconsistent with <u>Shawley v. Shea-Ball Constr. Co.</u>, 216 Va. 442, 219 S.E.2d 849 (1975), the leading case interpreting the statutory time bar.[8]

Both the majority and the dissenting commissioners, however, agreed on the facts. The evidence before the commission included Southers's testimony conceding that she had never filed "any claims for a neck injury" and that neither CRM nor its insurance carrier attempted to dissuade her from doing so. Seeking to explain her reason for not filing a timely neck-injury claim, Southers testified (despite medical records suggesting otherwise) that she did not "suffer from neck pain" prior to the expiration of the two-year limitations period and never complained of neck pain to any treating physician during that period.

II.

An injured employee must file a claim with the commission within two years of the accident. If the claimant fails to meet this filing deadline, the right to compensation "shall be forever barred." Code § 65.2-601. Unlike an ordinary statute of limitations, this statutory bar acts as a "jurisdictional" limitation on the commission's remedial powers. <u>Shawley</u>, 216 Va. at

---

[8] The dissenting commissioner also cited <u>Fleetwood Homes of Va., Inc. v. McNeal</u>, No. 2236-00-3, 2001 Va. App. LEXIS 311, at *10-11 (June 5, 2001) ("Clearly, <u>Shawley</u> does not create an exception for adjacent body parts to the requirement that all claims growing out of an accident must be timely asserted."), and <u>McKee Foods Corp. v. Atkins</u>, No. 2727-00-3, 2001 Va. App. LEXIS 399, at *8 (July 3, 2001) ("Further, the commission has no authority to rewrite the agreement to encompass the injury or to determine if adjacent body parts not identified in the agreement are 'close enough' to be covered." (footnote omitted)).

445, 219 S.E.2d at 852; see also Stuart Circle Hosp. v. Alderson, 223 Va. 205, 208-09, 288 S.E.2d 445, 447 (1982); Barksdale v. H.O. Engen, Inc., 218 Va. 496, 497, 237 S.E.2d 794, 795 (1977). In the absence of a genuine dispute of material fact, the question whether "a claim is barred by the statute of limitations is a question of law." Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 284, 623 S.E.2d 433, 437 (2005).

Our analysis begins with Shawley, the governing precedent on the jurisdictional nature of the statutory bar.[9] In that case, an employee fell from a ladder and filed a timely claim for injuries to his "right hip and left ankle." Shawley, 216 Va. at 443, 219 S.E.2d at 850 (describing claim in a memorandum of agreement). After the expiration of the filing deadline, the employee filed an "additional claim for alleged back and right leg injuries." Id. at 443, 219 S.E.2d at 851. The employer refused to pay, arguing the new claim had not been timely filed. The commission agreed, holding the employee failed to file a "claim for injury to the back or right leg" within the (then one-year) statutory limitations period. Id.

On appeal, the employee in Shawley argued it was "not necessary to specify all injuries in his original claim" filed with the commission. Id. at 446, 219 S.E.2d at 853. The Virginia Supreme Court flatly disagreed, holding "an employee must assert against his employer any claim that he might have for *any injury* growing out of the accident." Id. (emphasis added). Stressing the "jurisdictional" nature of the filing deadline, Shawley held that the employee's claim for injuries to his back and right leg was "forever barred," id. at 445-46, 219 S.E.2d at 852,

_____

[9] Over many decades, Virginia courts have characterized the statutory time limitation as jurisdictional. See, e.g., Binswanger Glass Co. v. Wallace, 214 Va. 70, 73, 197 S.E.2d 191, 193 (1973); Blue Diamond Coal Co. v. Pannell, 203 Va. 49, 50, 122 S.E.2d 666, 667 (1961); Winston v. City of Richmond, 196 Va. 403, 410, 83 S.E.2d 728, 732 (1954); Massey Builders Supply Corp. v. Colgan, 36 Va. App. 496, 502, 553 S.E.2d 146, 149 (2001); Metro Mach. Corp. v. Sowers, 33 Va. App. 197, 204, 532 S.E.2d 341, 345 (2000); Lynchburg Foundry Co. v. McDaniel, 22 Va. App. 307, 310, 469 S.E.2d 85, 87 (1996); Mayberry v. Alcoa Bldg. Prods., 18 Va. App. 18, 20, 441 S.E.2d 349, 350 (1994).

because these injuries were not identified in the original, timely-filed, claim — which listed only injuries to his "right hip and left ankle," id. at 443, 219 S.E.2d at 850.

Our most recent application of the statutory time bar, Tuck, 47 Va. App. at 283-84, 623 S.E.2d at 436-37, involved an untimely claim for a "neck" injury when the timely claim, memorialized in a memorandum of agreement, identified injuries only to the "lower back and right shoulder." The commission had disallowed the untimely neck-injury claim, holding that the "requirement that a claim be timely filed under Code § 65.2-601 is jurisdictional" and no statutory or equitable exception suspended its operation in this particular case. Tuck v. Goodyear Tire & Rubber Co., VWC File No. 204-66-57, 2005 Va. Wrk. Comp. LEXIS 274, at *10 (Apr. 8, 2005). A dissenting commissioner disagreed, arguing that the employer knew of the neck injury and should not be relieved of the obligation to compensate for that injury simply because the memorandum of agreement "did not list 'neck'" among the injured body parts. Id. at *21. We affirmed the majority's view, holding that the neck claim was "barred by the two-year statute of limitations pursuant to Code § 65.2-601" and that none of the proffered exceptions to the statutory bar applied. Tuck, 47 Va. App. at 286, 633 S.E.2d at 438.[10]

Here, Southers made a timely claim for a "contusion to the left shoulder" and an untimely claim for an injury to the C5-6 facet joint of her cervical spine. Departing from its reasoning in Tuck,[11] the commission interpreted the Shawley time bar to apply only to "a body part *unrelated*

---

[10] Virginia law recognizes "only three exceptions" to the jurisdictional time-bar: (i) the statutory exception codified by Code § 65.2-602, (ii) the equitable exception for prejudicial misrepresentations and concealments by an employer, and (iii) the *sui generis* exception recognized by the doctrine of imposition. Tuck, 47 Va. App. at 284, 623 S.E.2d at 437. Southers does not invoke, nor did the commission apply, any of these exceptions in this case. We likewise need not address them.

[11] The dissenting commissioner in Southers's case also noted that the majority failed to address Gross v. Wyeth-Ayerst Labs., VWC File No. 182-73-27, 2000 Va. Wrk. Comp. LEXIS 503, at *8-10 (Apr. 11, 2000), aff'd per curiam, No. 1081-00-2 (Va. Ct. App. Oct. 10, 2000) (unpublished), which held that a timely claim for injuries to the "left arm, hand, elbow and

to that reflected in the initial claim for benefits" and concluded Shawley did not apply to this case because it did not involve "injuries to two separate body parts."

To begin with, we question whether the commission meant its reasoning to be taken literally. That is, we think it unlikely the commission was truly unwilling to recognize the left shoulder and the C5-6 facet joint as "two separate body parts." Obviously they are, from the perspective of both physicians and laymen. Nor can we accept that a left shoulder bruise is anatomically the same as a cervical spine injury. What we understand the commission to be saying is that, while not the same, they are close enough to pass the Shawley specificity standard.

We cannot concur with the commission's reasoning. The timely claim in Shawley included an allegation of injury to the "right hip," whereas the untimely claim included the "back" and "right leg" among the injured body parts. Shawley, 216 Va. at 443-44, 219 S.E.2d at 851. We discern no principled basis, in law or in fact, for the commission to assert that the right hip is unrelated to either the back or the right leg (thus not close enough to excuse the time bar in Shawley), but the left shoulder is related to the neck (thus close enough to excuse the time bar in Southers's case). This *ad hoc* distinction is no distinction at all, much less one to which our judicial imprimatur can be given.

In reply, Southers says this discursive legal debate over claim-filing principles should be subordinated to a more important factual point: Unlike the employer in Shawley, Southers's employer had "notice of a possible neck injury" because medical records mention she complained of neck pain prior to the expiration of the statutory deadline. See Appellee's Brief at 16. That is dispositive, she continues, because Shawley declared notice to be the "compelling"

shoulder" could not rehabilitate an untimely claim for a neck injury. See also Hardee's of Clintwood v. Robinson, No. 1753-02-3, 2003 Va. App. LEXIS 70, at *6-7 (Feb. 11, 2003) (The commission erred in holding that "to require the worker to distinguish between those body parts was 'too restrictive' an interpretation of the Act because it "relieved the claimant from the necessity of specifying all injuries in the original claim or within two years. That was the argument rejected in Shawley.").

public policy rationale underlying the statutory filing requirement.  Shawley, 216 Va. at 446, 219 S.E.2d at 853.  From these two observations, Southers concludes that the statutory filing requirement does not apply to any case (including hers) where the employer had notice of the unfiled, untimely claim.

We believe this misreading of Shawley leads to a *non sequitur* — one which, if accepted, would distort long-accepted principles governing statutes of limitation.  The observation in Shawley about the employer's lack of notice was meant to illustrate the animating public policy behind the statute, not to atomize it into a case-by-case adjudication of notice.  No published opinion of a Virginia court has ever interpreted Shawley to empower the commission to decide, by looking at the facts of each disputed claim, whether the statutory bar really advances its underlying notice policies and, if not, selectively suspend its application.  "In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."  Hallstrom v. Tillamook County, 493 U.S. 20, 31 (1989) (citation omitted).  No matter its view of the wisdom of applying filing deadlines to a given case, neither a court nor a commission can "disregard these requirements at its discretion."  Id.

To accept Southers's argument would be to employ the long-discredited "inherent equity" doctrine to judicially fashion an exception where the governing statute of limitations "creates none."  Bickle v. Chrisman's Adm'x, 76 Va. (1 Hansbrough) 678, 685 (1882) (citation omitted).  As a general rule, "courts have no authority to make any exception in favor of a party to protect him from the consequences" of a statute of limitations, Ackiss' Ex'rs v. Satchell, 104 Va. 700, 704, 52 S.E. 378, 379 (1905), and, in any event, "no reasons based on apparent inconvenience or hardship can justify a departure from it," Amy v. Watertown, 130 U.S. 320, 324 (1889).  To the extent specific exceptions exist, they are applied "with great caution;

otherwise the courts would make the law instead of administer it." Ackiss' Ex'rs, 104 Va. at 705, 52 S.E. at 379 (quoting Amy, 130 U.S. at 324).

With respect to Code § 65.2-601, we have recognized narrow exceptions to the two-year claim-filing requirement. See Tuck, 47 Va. App. at 284, 623 S.E.2d at 437. But we have never dispensed altogether with Code § 65.2-601's limitation period on any actual notice theory of *de facto* compliance. Indeed, in Cibula v. Allied Fibers & Plastics, 14 Va. App. 319, 324, 416 S.E.2d 708, 711 (1992), aff'd, 245 Va. 337, 428 S.E.2d 905 (1993) (*per curiam*), we recognized that an employer's "voluntary payment" of an injured employee's medical bills does not, by itself, estop the employer from invoking the two-year limitation bar of Code § 65.2-601. See also Stuart Circle Hosp., 223 Va. at 209, 288 S.E.2d at 447. All the more, an employer's actual notice of an injury would never suffice, by itself, as an exception to Code § 65.2-601's jurisdictional requirement that a timely claim be filed.

Despite the inconsistency inherent in her argument, Southers also claims neither she nor her attorney could have reasonably known to file a claim for a neck injury because no doctor diagnosed the C5-6 facet joint injury until after the expiration of the limitation period. The commission thought this point persuasive, dwelling at some length on the facts supporting it and concluding it helped to understand how the underlying injury (consistently referred to in the singular) remained the same from the date of the accident forward. We have two responses.

First, for purposes of Code § 65.2-601's two-year limitation, a claim accrues on the date of the accident not the date the injuries are medically diagnosed. Unless a statute of limitations expressly says so, the limitation period does not depend on the claimant's "discovery of injury or damage" even in situations where "the injury or damage is unknown or difficult or even incapable of discovery." Shipman v. Kruck, 267 Va. 495, 503, 593 S.E.2d 319, 323 (2004) (citations and ellipses omitted). This principle accepts, albeit reluctantly, that "statutes of

limitations may impose hardships upon individual litigants who discover salient facts after the statutory deadline. Such hardships are inherent in their nature." Hamilton v. 1st Source Bank, 928 F.2d 86, 90 (4th Cir. 1990) (*en banc*).

Second, even if Southers's medical diagnosis changed over time, what matters is not how the injuries *could have been described* in a timely claim but how they were, if at all, in fact described. In her memorandum of agreement, Southers specified the "nature of injury" and "parts of body affected" as a "contusion to the left shoulder." That description of a bruised left shoulder defined the boundaries of CRM's liability, as well as the limits of the commission's remedial jurisdiction. In short, by moving the liability markers out to include an injury to Southers's cervical spine — after the expiration of the two-year time bar — the commission exercised a jurisdictional power denied it by Code § 65.2-601.

### III.

The employee in Shawley argued it is "not necessary to specify all injuries" in a timely filed claim. Shawley, 216 Va. at 446, 219 S.E.2d at 853. "We disagree," the Virginia Supreme Court replied, holding that "an employee must assert against his employer *any claim* that he might have for *any injury* growing out of the accident." Id. (emphasis added). Shawley governs

this case.  As Southers concedes, she never filed a timely claim specifying an injury to her neck.

The commission, therefore, had no jurisdiction to make an award for this injury.

Reversed.

Elder, J., dissenting.

I believe the majority both (1) fails to defer to the commission's findings of fact, which are supported by credible evidence, and (2) interprets Code § 65.2-601 and the Supreme Court's holding in Shawley v. Shea-Ball Construction Co., 216 Va. 442, 219 S.E.2d 849 (1975), much too narrowly on the facts of this case. Employer did not dispute claimant suffered a neck injury that manifested itself primarily as chronic shoulder pain, and employer accepted a "shoulder" injury as compensable. I would hold employer's acceptance of the chronic symptoms as a compensable shoulder injury satisfied the statute of limitations because claimant's medical records document that, prior to expiration of the statute of limitations, claimant's symptoms consistently involved both her shoulder and her neck; an award for a shoulder injury was entered when the symptoms had been diagnosed as only a shoulder injury; and claimant received a diagnosis of neck injury only after the applicable statute of limitations had run.[12] Thus, I would affirm the commission's award of benefits, and I respectfully dissent.

I.

Because I believe the holding in Shawley indicates the contents of claimant's medical records are relevant to the analysis of the statute of limitations issue, particularly because of their repeated references to neck pain within the statutory period, I find it necessary to summarize claimant's records, course of treatment, and the procedural history of the claim in greater detail than does the majority. Because claimant prevailed before the commission, I recite that evidence in the light most favorable to claimant. See, e.g., Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986).

---

[12] Employer remained free to challenge causation based on the new diagnosis, and employer in fact did before the commission in this case.

- 10 -

Claimant sustained an injury by accident on May 23, 2003, when she was vacuuming and fell backward down a series of four steps while working as a housecleaner for Cottage Care, a division of Corporate Resource Management (CRM). She was carrying a "portavac" around her neck, and when she fell, she landed with all her weight on her left shoulder. She sought medical treatment, complaining of pain throughout her entire left shoulder and across the back of the shoulder blade that "moves to [the] left side of [her] neck." She came under the care of an orthopaedist, Dr. Praveer Srivastava, who ordered various tests, including a left shoulder MRI, and a course of physical therapy but was unable to determine the source of claimant's shoulder and neck pain. When a course of work hardening resulted in some improvement, Dr. Srivastava released claimant to return to work without restrictions, but within a few weeks, she reported a recurrence of "severe[] symptom[s]" in her shoulder and neck and was again excused from work.

Dr. Wilhelm A. Zuelzer, who saw claimant in October 2003 to render a second opinion, also noted claimant's ongoing neck and left shoulder pain. Dr. Zuelzer opined claimant's shoulder was "fine" and was not the source of her symptoms. He recommended an MRI of the neck but indicated he thought that, regardless of what the MRI showed, claimant's ongoing pain "more than likely is coming from [the neck] area." After receiving Dr. Zuelzer's recommendations, Dr. Srivastava ordered additional tests including an MRI of claimant's cervical spine. The MRI revealed only a "[m]inimal C5-6 posterior disc bulge" and was "otherwise normal." When claimant returned to Dr. Srivastava on November 20, 2003, with "unchanged symptoms" including persistent neck and left shoulder pain, Dr. Srivastava informed her that her various tests revealed no significant abnormalities, and he released her to regular duty. Thereafter, claimant experienced "[ongoing] neck and shoulder pain," but Dr. Srivastava refused to treat her because "the bills were not paid at that time."

During that time frame, employer and its purported insurance carrier were engaged in a dispute over whether employer had coverage at the time of claimant's accident. Claimant had no private health insurance and also had insufficient funds to obtain her own medical treatment because she was unable to work due to her injury during that time. Thus, although she experienced ongoing pain, she received no medical treatment for it from late 2003 until mid-2005.

In late 2003, claimant sought additional temporary total disability benefits, but the dispute between employer and the carrier delayed resolution of this claim. In March 2005, employer accepted liability for the additional period of temporary total disability. An award for disability and lifetime medical benefits for the shoulder injury was entered on May 2, 2005, and at claimant's request, employer offered her a new panel of physicians on May 11, 2005. Claimant chose a new treating physician from the list but was not able to obtain an appointment with him until June 8, 2005, two years and approximately two weeks after her accident of May 23, 2003.

When claimant saw her new treating physician, Dr. John Frederick Meyers, on June 8, 2005, she reported chronic pain in her left upper back and shoulder, and Dr. Meyers noted tenderness and limited rotation in claimant's neck. He diagnosed her as having cervical radiculitis. After a spine surgeon determined claimant was not a candidate for surgery, she was referred to a pain management physician, Dr. Michael DePalma.

Dr. DePalma performed a series of diagnostic injections and opined that claimant had facet joint arthrosis of the cervical spine at C5-6. Dr. DePalma indicated that "[t]he primary source of [claimant's] pain was the [facet] joint" and explained that this was a different diagnosis categorically from C6 radiculopathy, which is a dysfunction of the nerve root at the vertebral joint rather than at the facet joint. He also noted that "[f]acet joint arthrosis is . . . difficult to

- 12 -

completely discern just on MRI findings." Finally, he opined to a reasonable degree of medical probability that claimant's work-related fall caused the injury to her cervical spine, which was the source of her symptoms and work restrictions.

When claimant filed a new change-in-condition application, employer contended the claim for a neck injury was barred by the statute of limitations because her original claim was for an injury to her left shoulder only.[13] At the hearing before the deputy, claimant testified that the primary pain she experienced was consistently in the same part of her body, which she described as her entire back left shoulder with radiation into her left arm and hand. She testified that Dr. Meyers, whom she first saw over two years after the accident, was the first physician to tell her that her "injury was coming from [her] neck." She denied having "any other accidents of any kind whatsoever since [her] original accident back in 2003." She agreed that she signed the Agreement to Pay Benefits form on September 18, 2003, listing her injury as a "contusion to [her] left shoulder" and that she had an attorney when she did so, but she indicated she did not complete the form herself.

The deputy concluded that claimant's claim was not barred by the statute of limitations, reasoning as follows:

> [T]he Agreement to Pay Benefits form reflects a contusion to the
> left shoulder. Medical records reflect some neck pain . . . .
> Despite conflicting opinions about the etiology of the claimant's
> symptoms, it is clear that they have their origin in the occupational

---

[13] Claimant "relie[d] on estoppel or imposition, given the complicated procedural history" of the claim. As the deputy explained claimant's argument, "the prior claim was not resolved until May 2005. A new panel was then awarded. By the time the claimant saw the new doctor [who she testified was the first to diagnose her injury as being to her neck], it was more than two years beyond the date of accident."

Although claimant raised the doctrine of imposition before both the deputy and the commission, the commission chose to make no ruling on the application of the doctrine because it found the statute of limitations did not bar the claim. Although imposition may have provided the commission with an alternative basis for awarding benefits, it did not hold that imposition applied, and we may not consider application of this doctrine on appeal.

accident and have manifested themselves primarily as shoulder symptoms. The claimant could not reasonably be expected to file a claim for a neck injury when none had been diagnosed, and we do not believe her claim is time-barred because a new physician now disagrees with the earlier diagnosis as to the etiology of her symptoms.

The deputy further noted that the claim did not involve a situation in which claimant sustained multiple injuries to different parts of the body and filed a timely claim for injury to only one of those body parts.

Employer filed a request for review, and the commission affirmed, with one commissioner dissenting. The majority reasoned as follows:

The Agreement to Pay Benefits form indicated the nature of injury to be a contusion to the left shoulder. The claimant has consistently complained of pain in the lateral section of her shoulder, which at times included neck pain and radiation both down the arm and up the neck. It is uncontradicted that her symptoms never changed from the date of the accident. While the claimant complained of neck and shoulder complaints, she received various diagnoses relating only to the shoulder and it was not until she underwent substantial diagnostic evaluations that Drs. Meyers and DePalma diagnosed her with a neck injury.

Therefore, we find that this is not a case involving injuries to two separate body parts but the same injury throughout the course of treatment, now presenting with an altered diagnosis. We find that the constant symptoms caused by the injury encompassed both the shoulder and neck and neither the nature of the injury nor the manifestation of the symptoms have changed since the date of injury or when the Agreement to Pay Benefits form was executed. The claimant's symptoms have consistently manifested in shoulder pain which [only] recently [has been] attributed to claimant's neck injury. We agree with the Deputy Commissioner that it was reasonable for the claimant to have relied on the treating physician's diagnoses in seeking benefits relating to the shoulder contusion and it would be unreasonable to expect a claimant to file a claim for an injury to a body part, for the same symptoms for which the claimed diagnosis was made, for which her physician had not identified any specific injury.

The commission noted that employer had notice of the accident and injury and that the Act does not "impose a duty on employees to amend agreement forms with each new development in

- 14 -

treatment." It distinguished the holding in Shawley as involving the untimely filing of a claim for a body part wholly unrelated to the body part named in the initial claim for benefits.

Employer noted this appeal.

## II.

On appeal, we are to find guidance in the principle that the Workers' Compensation Act "is highly remedial." Henderson v. Cent. Tel. Co., 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987). Although "statutory construction may not be used to extend the rights created by the Act beyond the limitations and purposes set out therein," Garcia v. Mantech Int'l Corp., 2 Va. App. 749, 754, 347 S.E.2d 548, 551 (1986), the Act should nevertheless "be liberally construed to advance its purpose . . . [of compensating employees] for accidental injuries resulting from the hazards of the employment," Henderson, 233 Va. at 382, 355 S.E.2d at 599. "Although 'we are not bound by the commission's legal analysis in this or prior cases,' we give great weight to the commission's construction of the Act, and we defer to the commission's factual findings if supported by credible evidence in the record." Bay Concrete Constr. Co. v. Davis, 43 Va. App. 528, 538-39, 600 S.E.2d 144, 150 (2004) (quoting USAir, Inc. v. Joyce, 27 Va. App. 184, 189 n.1, 497 S.E.2d 904, 906 n.1 (1998)) (citations omitted).

Via Code § 65.2-601, the legislature has provided that "[t]he right to compensation under [the Workers' Compensation Act] shall be forever barred[] unless a claim be filed with the Commission within two years after the accident." The statute of limitations in Code § 65.2-601 is jurisdictional. Barksdale v. H.O. Engen, Inc., 218 Va. 496, 497, 237 S.E.2d 794, 795 (1977).

The Supreme Court applied the statute of limitations in the seminal case of Shawley,[14] holding that a timely claim for injury to an employee's left ankle and right hip did not preserve a

---

[14] Shawley was decided under Code § 65.1-87, the predecessor to present Code § 65.2-601, which provided a one-year statute of limitations.

claim for injury to his back and right ankle *in a case in which, the Supreme Court emphasized, the medical records gave no indication of any injury to the back and right ankle until after the statute of limitations had passed.* 216 Va. at 443-47, 219 S.E.2d at 851-53. The Supreme Court noted the commission's factual findings that "the back and right ankle claims asserted by [Shawley] were for injuries not covered by the memorandum of agreement or [the commission's] original award" and that Shawley made "'no assertion *or complaint* of back or right leg injury'" until after the applicable statute of limitations had expired. Id. at 444, 445, 219 S.E.2d at 851, 852 (emphasis added).

Here, the majority, relying on Shawley, concludes that a timely claim was filed only for claimant's shoulder injury and that, because it is undisputed claimant's current disability stems from an injury to her cervical spine rather than her shoulder, the statute of limitations bars her from receiving benefits for the cervical spine injury. I believe Shawley is factually distinguishable and does not support the result the majority reaches.[15]

_____

[15] The majority also cites our recent decision in Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 623 S.E.2d 433 (2005), in support of its holding. I disagree that Tuck supports the interpretation of Shawley the majority applies in the instant case.

The decision in Tuck was based in large part on the unique facts as found by the commission in that case. As the commission indicated, Tuck's emergency room records noted "[c]ervical and back spasms . . . , in addition to a right shoulder contusion," and "the diagnosis was a right shoulder contusion, and neck and lumbar strains." Tuck, No. 204-66-57, 2005 Va Wrk. Comp. LEXIS 274, at *2 (Apr. 8, 2005). Tuck's treating orthopedic physician "diagnosed a right rotator cuff tear, and 'aggravation of cervical and lumbar DDD with cervical and LS strain/sprain.' A November 22, 2000, Attending Physician's Statement noted that the claimant 'injured R shoulder; neck and back; R hand' in the accident." Id.

Although Tuck had originally filed claims that included her upper back and hand, she and the carrier thereafter executed multiple memoranda of agreement that named only the lower back and right shoulder and did not include the upper back and hand. 47 Va. App. at 279-80, 623 S.E.2d at 434-35. The commission then wrote to Tuck stating that if all issues raised in her amended claim for benefits had been resolved, she should notify the commission in writing that the scheduled hearing was not needed. Id. at 280, 623 S.E.2d at 435. In response, Tuck "filed a hand-written letter requesting that the dispute be removed from the hearing docket." Id. When Tuck later again sought benefits for her upper back and right hand, as well as her neck, the commission found, based on Tuck's earlier written representations, that the memoranda of

- 16 -

In Shawley, the Court cited as "compelling" reasons for requiring a claimant to file a timely claim for all injuries sustained in a particular accident the need of the employer to "determin[e] whether or not there was in fact an injury, the nature and extent thereof, and if related to the accident." Id. at 446, 219 S.E.2d at 853. It also noted that the filing of a timely claim allows an employer to obtain "the treatment necessary to effect a cure of the claimant and to minimize the employer's liability." Id. at 447, 219 S.E.2d at 853. Because Shawley reported only an injury to his left ankle and right hip, the employer had no notice that Shawley contended his back and right ankle were involved; no opportunity to make a contemporaneous determination about whether the back and right ankle injuries could, in fact, have been sustained in the accident reported; and no ability to obtain timely medical treatment for those body parts not originally listed in order to minimize its liability for disability and medical treatment resulting from injury to those parts. In addition to noting Shawley did not file a timely claim for injury to those body parts, the Supreme Court emphasized that "[a]n examination of the medical

<hr />

agreement resolved all issues regarding what body parts her 2001 claim stated had been injured. Id. at 282, 623 S.E.2d at 436. We held on appeal that "[c]redible evidence supported the commission's decision . . . that the parties' [Memoranda of Agreement] resolved all issues raised in [Tuck's] April 2001 claims for benefits and that [Tuck] did not prove mutual mistake." Id. at 286, 623 S.E.2d at 438.

We did not separately address in Tuck, as the Supreme Court did in Shawley, whether the carrier or employer had notice that Tuck claimed injury to the upper back and hand in the industrial accident; Tuck's employer clearly had notice of the upper back and hand injuries but also had notice, as found by the commission, that claimant had affirmatively abandoned any claim she might have had for coverage of those parts. Although Tuck had not previously specified a "neck" injury in the claims she filed with the commission, she had expressly claimed injury to her upper back, which the medical records indicated were in the cervical spine, i.e., the upper back. Further, both the commission and this Court analyzed the question of whether claimant could assert and withdraw claims "'and then return later *to revive* resolved claims,'" concluding "'the evidence does not indicate that the employer intended to accept [Tuck's] claim for a neck injury and mistakenly omitted the neck in the [memorandum of agreement].'" Id. at 283, 284, 623 S.E.2d at 436, 437 (quoting commission's opinion) (emphasis added); see also id. at 284, 623 S.E.2d at 437 ("Because evidence supports the commission's finding that the 2001 claims were resolved and that [Tuck] did not prove mutual mistake of fact, the only issue is whether [Tuck's] April and May 2003 claims for benefits for injury to her neck and right hand are barred by the statute of limitations.").

- 17 -

reports and other documents submitted within the [statute of limitations] period from the date of the accident fail[ed] to disclose any reference to an injury to Shawley's back or to his right leg or right ankle" and that "[n]owhere in any of the reports [was] it recorded that Shawley complained of such an injury within that period." Id. at 444-47, 219 S.E.2d at 851-53. Thus, the Court found relevant *both* the failure to file a formal claim listing injuries to the back and right ankle prior to expiration of the statute of limitations *and* the absence of any mention of injury to those body parts in the medical records prior to expiration of the statute of limitations.

Claimant's situation is readily distinguishable. In claimant's case, claimant reported falling on her left shoulder, and employer accepted as compensable the injury to claimant's left shoulder. In marked contrast to Shawley, the commission found that, contemporaneously with the accident and prior to expiration of the statute of limitations, claimant "consistently complained of pain in the lateral section of her [left] shoulder, which at times included neck pain and radiation . . . up the neck." The medical records support this finding.[16]

_____

[16] Claimant testified that she did not report neck pain to her medical providers, although frequent notations about reports of neck pain appear in her medical records. The deputy considered this testimony in his opinion but implicitly concluded it did not compel the finding that claimant made no such reports. The commission also found as a fact that claimant "consistently complained of pain in the lateral section of her shoulder, which at times included neck pain and radiation both down the arm and up the neck."

Credible evidence in the record supports these findings. Further, these findings do not run afoul of the ruling announced in Massie v. Firmstone, 134 Va. 450, 462, 114 S.E. 652, 656 (1922), which provides that, although a party offering witnesses giving conflicting testimony may ask the court to accept the more favorable testimony, that principle is not applicable "to the testimony which [the litigant] gives himself" because "[n]o litigant can successfully ask a court or jury to believe that he has not told the truth." The holding in Massie applies to "statement[s] of fact within [the litigant's] knowledge" but not to "expression[s] of opinion." Ford Motor Co. v. Bartholomew, 224 Va. 421, 431, 297 S.E.2d 675, 680 (1982).

On this record, the evidence supported a finding that claimant's testimony that she did not report neck pain to her medical providers was not a "statement of fact within [her] knowledge" in the sense that she was a layperson with a ninth grade education and no medical training. The commission was entitled to conclude that this seeming discrepancy between claimant's testimony and her medical records resulted from the fact that claimant could merely have shown the various treating medical personnel where she hurt, after which they determined the appropriate name for the part of the body part or parts to which she referred. Clearly, the

Thus, here, unlike in Shawley, claimant's timely claim for a left shoulder injury and her consistent complaints to her medical providers of pain in her left shoulder radiating into her neck gave employer all the notice it needed to meet the objectives that Shawley termed "compelling" reasons requiring the timely filing of a claim for all injured body parts.[17]  Employer had timely notice of claimant's assertion that she suffered a significant blow to her left shoulder area, and claimant received timely medical attention for the affected, interrelated body parts.  Claimant, a layperson with a ninth grade education, could not be expected to know precisely where her scapular region ended and her cervical region began.  Further, neither claimant's original treating physician nor the physician who performed an independent medical examination at employer's request was successful in determining the precise source of claimant's radiating shoulder pain before the statute of limitations had expired.  In fact, both these physicians purported to *exclude* claimant's cervical region as the source of her chronic pain.

The commission's finding that claimant's cervical spine injury was encompassed by the award for her shoulder injury was supported by credible evidence in the record.  As the commission stated,

> it was reasonable for the claimant to have relied on the treating physician's diagnoses in seeking benefits relating to the shoulder contusion and it would be unreasonable to expect a claimant to file a claim for an injury to a body part, for the same symptoms for which the claimed diagnosis was made, for which her treating physician had not identified any specific injury.

primary location of claimant's pain was her left shoulder, and as set out *infra* in the text, claimant, a layperson with a ninth grade education, could not be expected to know with anatomic precision where her scapular region ended and her cervical region began.

[17] The unpublished Court of Appeals decisions relied upon by the dissenting commissioner and employer on brief, and noted by the majority in this appeal, are not controlling.  See, e.g., Fairfax County Sch. Bd. v. Rose, 29 Va. App. 32, 39 n.3, 509 S.E.2d 525, 528 n.3 (1999) (en banc) (noting that unpublished opinions of Court of Appeals have no precedential value).

Application of such reasoning under the facts of this case does not contravene Shawley's holding regarding the "compelling" reasons entitling an employer to timely notice of a particular injury.[18] Here, claimant received timely medical treatment for *the symptoms* caused by her industrial accident,[19] although her physicians were not initially successful in identifying their source. When the "primary source" of claimant's chronic pain was finally diagnosed as "facet joint arthrosis" of the cervical spine at C5-6, employer had the opportunity to contest causation and was not held to its prior acceptance of claimant's injury to her "shoulder" as binding it to cover the newly diagnosed source of claimant's pain. Employer does not contest the

_____

[18] The majority opinion states that "the only timely claim *asserted by Southers* identified her injury as a 'contusion to the left shoulder.'" (Emphasis added). However, the record indicates that Southers merely indicated where she hurt, which medical records show was "throughout her entire left shoulder," "across the back of the shoulder blade," and "mov[ing] to her left side of the neck." Although claimant was represented by counsel, it was employer, not claimant or claimant's counsel, who prepared the agreement to pay benefits for a left shoulder contusion that claimant executed and upon which the award of benefits was based.

Barring benefits for claimant's neck injury on these facts opens the door wide to undesirable consequences that do not further the purpose of the Act and are not compelled by Code § 65.2-601 or Shawley. As Judge Coleman aptly observed in dissenting from a prior unpublished decision on this issue, such a holding

> creates an enormous pitfall for the unwary claimant who has no obvious reason or incentive to not accept the benefits to which he or she will be entitled under [an agreement to pay benefits] in which the employer or insurance carrier has chosen, *and will now be encouraged*, to list only one of the several compensable injuries that the employee may have received or to describe the injury to the most precise or restricted body part.

Fleetwood Homes of Va., Inc. v. McNeal, No. 2236-00-3, 2001 Va. App. LEXIS 311, at *13-*14 (June 5, 2001) (Coleman, J., dissenting) (emphasis added).

[19] Notably, the claimant is entitled to receive necessary medical treatment for her ongoing shoulder problems. See Quality Inn Executive v. Umana, No. 1593-98-4, 1999 Va. App. LEXIS 344 (June 15, 1999) (affirming decision of commission holding claim for neck injury was barred by statute of limitations but that, because claim for shoulder injury was timely filed, "'treatment for the claimant's cervical condition is necessary treatment related to the compensable accident to the extent that it is necessary to treat symptoms related to the shoulder injury'"); see also Rose, 29 Va. App. at 39 n.3, 509 S.E.2d at 528 n.3 (noting Court's unpublished opinions have no precedential value but that court or commission "does not err by considering the rationale and adopting it to the extent it is persuasive").

commission's determination of causation in this appeal and does not contend that it might somehow have proved the injury to claimant's cervical spine was unrelated to the industrial accident if it had received notice of the precise mechanism of claimant's injury within the statutory period. The fact that employer did not learn at an earlier time the precise mechanism causing claimant's chronic pain was not the fault of the claimant, and applying the statute of limitations on these facts would provide a windfall to employer.

III.

On these facts, I would hold that the commission's entry of an award for medical and disability benefits for claimant's "shoulder injury" of May 23, 2003, covered the cervical spine facet joint arthrosis injury that manifested itself in claimant's chronic shoulder and neck pain. Thus, I would affirm the commission's award of benefits, and I respectfully dissent.